S. F. HALL, PLAINTIFF AND APPELLANT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, DEFENDANT AND APPELLANT.*

Springfield Court of Appeals. May 20, 1930.

432

*Corpus Juris-Cyc References: Damages, 17CJ, section 279, p. 983, n. 76; Malice, 38CJ, section 4, p. 348, n. 58; Master and Servant, 39CJ, section 106, p. 97, n. 86; section 127, p. 105, n. 99; section 143, p. 114, n. 90; Pleading, 49CJ, section 1187, p. 805, n. 9; Trial, 38Cyc, p. 1543, n. 69.

*E. T. Miller* and *Ward & Reeves* for defendant and appellant.

*Barton & Moberly* for plaintiff and appellant.

COX, P. J.—Action by plaintiff against defendant for damages for an alleged wrongful discharge and refusal to give a service letter as required by section 9780, Revised Statutes 1919. The petition was in two counts. The first count alleged the employment of plaintiff by defendant as a first-class boiler maker and boiler inspector and a discharge in violation of the agreement between the defendant and

the Frisco Association of Metal Crafts of which plaintiff was a member and asked both actual and punitive damages. The second count alleged the employment of plaintiff by defendant and a wrongful discharge and refusal to issue to plaintiff upon his demand a service letter as required by the statute and asked for both actual and punitive damages. The plaintiff recovered nominal damages on each count and $1500 punitive damages on the second count. Both parties appealed.

The plaintiff states that if the court holds against defendant on this appeal he will waive his appeal and consent for the judgment to be affirmed but if the case is to be reversed he wants the questions raised by him on his appeal determined. In view of that situation we shall examine the questions raised by defendant first.

The first point made by defendant applies to the first count of the petition only. It is contended that this count of the petition is based upon a hiring for a term of three years, a definite period, and he was allowed a recovery upon a violation of the agreement between defendant and the labor union of which plaintiff was a member. Defendant seeks to invoke the rule, which is well established, that a plaintiff cannot allege one cause of action and recover upon another. The first count of the petition after alleging his employment and that plaintiff entered upon his duties proceeds as follows: "Said employment to continue in force and effect for three years from and after July 1, 1925, and to continue thereafter for a like period of time at the same rate of pay subject only to a modification as to the rate of pay by either party giving a sixty-day notice."

As printed in the abstract of record the above ends a paragraph. This is followed by another paragraph as follows: "Plaintiff states that he is a member of the Frisco Association of Metal Crafts, a copy of the agreement between said Frisco Association of Metal Crafts and the St. Louis-San Francisco Railway Company is herewith attached to, filed with, and marked Exhibit A and made a part of this petition." This is followed by another paragraph as follows: "Plaintiff further states that under the agreement between the Frisco Association of Metal Crafts as aforesaid and the defendant that the defendant agreed with said Frisco Association of Metal Crafts, of which plaintiff is a member, that no employee who had been in the service of defendant for a period of thirty days would be discharged for any cause except drunkenness without first being given an investigation, in which investigation he might be represented by any employee he may choose, and if the foreman or officer holding the investigation decides that the employee should be discharged that the employee be given five days in which to appeal his case to the master mechanic, and if he should decide against the employee seven days to be allowed said employee for appeal to the next higher official and so on until the case has reached the Super-

intendent of Motive Power." The above allegations were followed by an allegation that he was discharged without an investigation and without just cause and for one other than drunkenness; that he was not given the right of appeal as granted by the agreement with the union.

There is a direct allegation in the petition that the employment was for a term of three years but there is also an allegation which shows that he was working under the agreement between defendant and the union of which plaintiff was a member. The petition in this count, in fact, pleads both the hiring for three years and a hiring under the agreement with the union. There was no motion filed asking that plaintiff be required to elect nor was this count attacked in any way except by a motion to strike out other portions of it which was sustained. Counsel for defendant insists that this count only alleges one employment and that was a direct hiring for a three year period and the allegations about the agreement between defendant and the union and his discharge in violation thereof was only to show a wrongful discharge and does not amount to an allegation of employment under the agreement with the union. We do not agree with that contention. Our conclusion is that it alleges employment in both ways and authorized the submission of the case as was done on the theory of an employment under the agreement with the union. Holding as we do on this question, eliminates the question of the Statute of Frauds raised by defendant on the theory that a three year contract must be in writing.

Defendant next seeks to invoke the rule that in the absence of a showing of employment for a definite period of time an employee could not recover for a wrongful discharge. Generally speaking that rule is well established as shown by the authorities cited by defendant, but we do not think it is so absolute and so technical as to nullify and make void an agreement not to discharge an employee without an investigation coupled with the right of appeal to a high official or servant of the same employer. We do not think the rule was intended to go that far. We can see no impropriety in any person or corporation who employs a large number of men who are members of a labor union making and being bound by an agreement made with the representatives of a labor union for and on behalf of the members of that union such as was entered into between defendant and the union of which this plaintiff was a member. We hold that the agreement referred to was binding and the plaintiff was entitled to the benefit of its provisions relative to a discharge by defendant.

We come now to the question of a wrongful discharge in violation of Rule 9 which was a part of the agreement between defendant and the Frisco Association of Metal Crafts, the labor union of which plaintiff was a member. This agreement is headed as follows:

"Agreement Governing Hours of Service and Working Conditions between St. Louis-San Francisco Railway Company . . . and Frisco Association of Metal Crafts and Car Department Employees." Rule 9, which is a part of this agreement is as follows: "Rule No. 9.—All employees entering the service will be required to fill out standard form of application and comply with all provisions contained therein including physical examination when required by the company. No employee who has been in service of the company for thirty days will be discharged for any cause except drunkenness without first being given an investigation at which investigation he may be represented by any employee whom he may choose. If the foreman or official holding the investigation decides that the employee should be discharged, the employee or his representative will be given five days in which to appeal the case to the Master Mechanic or Shop Superintendent. If he should decide against the employee, seven days will be allowed for appeal to the next higher official and so on until the case has reached the Superintendent of Motive Power. If unjustly discharged, the employee will be reinstated with full pay for time lost." Plaintiff's testimony as to what happened just before he was discharged is in substance as follows: That an investigation of some kind was made concerning C. A. Berry, who was the foreman directly over plaintiff. Some one had come to plaintiff and he had made a statement concerning Berry. Later, plaintiff was called from Thayer, Missouri, where he worked, to Memphis, Tennessee, a distance of 150 miles, to see Mr. B. G. Gamel, who was Master Mechanic, and over both plaintiff and Berry, his foreman. When he reached Mr. Gamel's office in Memphis, Gamel said to him that some of the statements he had made concerning Berry were not true and he would have to make another statement. Plaintiff replied that the statement he had made was correct and he would not change it. Nothing was said to plaintiff about any charge having been filed against him and nothing said to indicate that he was being investigated with a view to his discharge. On cross-examination, he said when he was in Mr. Gamel's office, a stenographer was called in and what he said was taken down by her. As to what happened there he said "I was asked questions by Mr. Gamel about the matter about which I was afterward discharged. He asked me about my statements and he told me that it was incorrect. He said he had the statements of four men, but he did not show them to me, and he told me that based upon these statements, that my statement was incorrect. He asked me what other proof I had. I tried to furnish him other proof but he would not let me. I wanted to furnish him some other proof but he would not let me. He did not want to hear my side of the case. When I would start to tell him he would tell me that he did not want to hear that. I did not have a copy of that statement. He told

me that I did not need one. I told him that in Memphis and in Thayer too. . . . He told me that I had no investigation. . . . He was wanting me to change my statement. He said I had falsified. He said he had the written statement of four men but he would not let me see them. I asked him to let me see them but he would not do it. . . . I was called in by B. G. Gamel. He came up there to Thayer and called me to the office and told me that he was going to take me out of the service. . . . I was discharged December 30th. I first talked to B. G. Gamel about getting a service letter. I told him that I wanted one. The evening that he took me out of the service I told him that I was entitled to an investigation. I also told him that if I was taken out of the service I was entitled to a service letter. I told him that in the office. That was on December 30th."

Defendant contends that even if it was bound to give plaintiff an investigation that its duty to him in that respect was fully discharged. We do no think so. There is no evidence on the part of either plaintiff or defendant that plaintiff was ever notified of any claim by any person that he had been guilty of conduct that might justify his discharge or that a hearing on that question would be held. All the evidence there is on that question is to the effect that he was notified to come to Memphis to the office of the Master Mechanic and that he went and was there questioned by the Master Mechanic who tried to induce him to change a former statement he had made in reference to Mr. Berry, his foreman. He insisted that the statement he had made was correct and refused to change it. In a few days thereafter he was discharged by the Master Mechanic. If that is the sort of investigation meant by Rule 9 above stated, then the rule means nothing. The meaning of that rule is that when a party is to be investigated with a view to his discharge he will be notified of what is charged against him and be given an opportunity to meet whatever proof may be presented against him and be permitted to be represented by a fellow workman of his own choice. It does not require formal charges to be filed nor a trial governed by the rules of court procedure but it does mean that he shall be notified before hand of the investigation and be given an opportunity to secure a fellow employee to assist him if he so desires and also be given a fair opportunity to refute proof of any alleged misconduct upon his part. It is clear to us that on plaintiff's testimony a case for the jury was made on the question of a wrongful discharge and the verdict for nominal damages on the first count of the petition was sustained by the evidence.

We come now to the second count on which plaintiff recovered $1 actual damages and $1500 punitive damages. This count charged a willful and malicious refusal to furnish plaintiff, on his demand, a service letter as required by section 9780, Revised Statutes 1919.

Plaintiff's evidence on that question is to the effect that when he was discharged by Mr. Gamel, the master mechanic on December 30, 1926, he requested a service letter. He so stated in this form: ". . . Also told him if I was taken out of the service I was entitled to a service letter." That, we think, was the equivalent to a direct request for a service letter. Mr. Gamel denied that plaintiff asked him for a service letter but on a demurrer to the evidence, we must take plaintiff's evidence as true and disregard the evidence of defendant unless it tends to strengthen that of plaintiff. It was admitted by Mr. Gamel while on the stand as a witness for defendant that if plaintiff had asked him for a service letter it would have been his duty to have requested the superintendent of motive power to issue it to him. He did not make such a request because, as he said, plaintiff did not ask him for such a letter. From all this the plaintiff is entitled to be considered as having requested a service letter from one whose duty it was to send in his request to the party charged with the duty to issue it and that party having refused to send this request in for him. Plaintiff also testified that he wrote Mr. Worman, the superintendent of motive power, whose duty it was to issue service letters, on March 17, 1927, requesting a service letter from him. He testified that this letter was properly addressed, stamped and deposited in the postoffice. Mr. Worman denied that he received that letter but it was a question for the jury as to whether he did or not. The defendant's evidence shows that in December, 1927, Mr. Frank Junkins, who lived in Springfield and represented the union of which plaintiff was a member, called upon Mr. Worman personally and requested that he issue a service letter to plaintiff and that this was the first request for a service letter he ever received. He then prepared a service letter and wrote plaintiff asking him to designate some railroad official or agent to whom he could send the service letter for delivery to plaintiff so a receipt could be taken for it. Plaintiff testified that he did not receive that letter. On the evidence as a whole on the question of a refusal of defendant to issue a service letter to plaintiff following a request by him for it, there was sufficient evidence to take that question to the jury hence the demurrer to the evidence on the second count was properly overruled.

On the question of punitive damages the defendant insists that the evidence did not justify the submission of that question to the jury. If it be true that the plaintiff requested Mr. Gamel, who discharged him, to give him a service letter as plaintiff testified and he refused to send the request in to Mr. Worman, the superintendent of motive power, whose duty it was to issue the letter, or if Mr. Worman received the letter sent him on March 17, 1927, by plaintiff, and there was some evidence tending to prove that he did receive it, then, in either event, a case was made for the jury on

the question of punitive damages. While plaintiff's testimony as to what occurred between him and Mr. Gamel at Memphis tends to show actual malice against plaintiff by Mr. Gamel, yet it is not necessary to show actual malice in order to recover punitive damages. Malice, in law, which is the intentional doing of a wrongful act, without just cause or excuse, is sufficient. [Lampert v. Drug Co., 238 Mo. 409, 418, et seq., 141 S. W. 1095; Foster v. C. B. & Q. Ry. Co. (Sup. Ct.), 14 S. W. (2d) 561.]

The party must know that the act is wrongful and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act. [Bean v. Branson, 217 Mo. App. 399, 408-9, 266 S. W. 743.]

If the evidence most favorable to plaintiff in this case be true, and that is all that we can consider in passing upon a demurrer to the evidence, we are of the opinion that there was sufficient evidence on the refusal to issue the service letter and of at least legal malice in that refusal and that was all that was necessary to take the question of punitive damages to the jury.

Contention is made that the amount of punitive damages is excessive but we do not think so.

Complaint is also made of statements by counsel for plaintiff in the closing argument. We have carefully considered that matter but do not think reversible error was committed therein.

The judgment will be affirmed. *Bailey* and *Smith, JJ.*, concur.