EDWARD J. BURENS, RESPONDENT, v. WOLFE WEAR-U-WELL CORPORATION, A CORPORATION, APPELLANT.—158 S. W. (2d) 175.

Kansas City Court of Appeals. January 5, 1942.

894

*Joe W. McQueen* and *C. F. Douglass* for appellant.

*Schultz & Bodney* and *Walter A. Raymond* for respondent.

BOYER, C.—Plaintiff obtained a judgment against the corporation for $800 actual and $200 punitive damages upon his petition charging that the corporate manager wrongfully, wilfully and maliciously refused to issue him a service letter upon the termination of his employment as required by Section 4588, Revised Statutes Missouri, 1929. T. W. Dawson was the superintendent and manager of the corporation and was joined in the suit as a codefendant.

At the close of plaintiff's evidence the court marked given an instruction to the effect that under the law and the evidence the verdict must be in favor of defendant, Dawson. There was no verdict under this instruction. At the close of all the evidence counsel for plaintiff announced: "Now plaintiff dismisses as to defendant, Dawson." The case was submitted to the jury upon instructions authorizing the recovery of both actual and punitive damages against the corporation with the result above stated. The corporation has duly appealed.

The errors are assigned in the brief under points and authorities. It is asserted with alleged reasons that the court erred (1) in refusing to sustain the demurrer of defendant at the close of all the evidence; (2) that the verdict for actual damages is excessive; and (3) that the court erred in giving and in refusing to give certain specified instructions.

There is evidence of the following facts: Plaintiff was employed by defendant corporation from 1927 to October 24, 1938, when he was discharged. The defendant was a wholesale distributor of shoes with a branch office at Kansas City, where plaintiff was employed doing work in the warehouse and on the road. At the time of plaintiff's discharge, T. W. Dawson was superintendent and manager at the Kansas City branch and had been for approximately one year. Immediately after plaintiff's discharge he obtained employment with a Mr. Carlat who was operating a retail shoe shore in Kansas City and handling the Wolfe Wear-U-Well line of shoes. When plaintiff returned after lunch on the first day of his employment he was

discharged by Mr. Carlat who testified that Mr. Dawson came to see him and asked if Burens was working there. Plaintiff was out at lunch. Dawson told Carlat that plaintiff was an agitator and trouble maker, and that he would take the stock of shoes away from Carlat if he hired plaintiff. As a result of this plaintiff was discharged. Plaintiff sought employment at various places and went to the Harris-Patton Employment Agency in Kansas City to enlist their services in procuring a position. He was informed that it would be necessary for him to have a service letter or letter of recommendation. The same request was made of him at other places where he applied for work. Plaintiff called on manager Dawson for a service letter in December, 1938, and stated that he informed Mr. Dawson that he wanted a letter stating the length of his service, the type of work and his qualifications, and that he could not get a job without such a letter. Dawson refused to give plaintiff a letter, but stated he would answer over the telephone or by letter any inquiries if plaintiff would find a place and give him as reference. A prospective employer of plaintiff wrote Dawson inquiring about plaintiff's qualifications, but received no reply. Dawson admitted that he received the letter and also admitted that he did not answer it. Plaintiff did not obtain employment from the party making the inquiry.

When plaintiff called on Dawson to obtain a letter he was accompanied by his brother-in-law who testified in plaintiff's behalf as to what occurred at that time, and in describing the conversation between plaintiff and Dawson, he said: "Well, at first I didn't pay much attention until I heard Ed ask him for a letter of recommendation and he said he wouldn't give it to him, and he said, 'Will you give me some kind of letter showing how long I worked here?', and he said, 'No, I won't give you that.' And Ed said something about the law, 'You know the law' or something, and he said, 'Yes, I know that, but I ain't going to give you any letter.'" He also quoted plaintiff as saying to Dawson: "I can't get a job any place. You keep me from getting any work."

Plaintiff made diligent effort to obtain work and made application at numerous places, including the Western Auto, Parkview Pharmacy, Webb Belting Company, Harris-Patton Employment Agency, and Missouri Employment Agency. Plaintiff failed to secure permanent employment until September, 1939, when the State employment agency succeeded in placing him with the Hood Rubber Company. From the time of his discharge October 24, 1938, to September, 1939, plaintiff earned not to exceed $100, but applied for and received twelve weeks' unemployment compensation. The amount was not shown in evidence.

While employed in defendant's warehouse, plaintiff's wages were stated to be $80 per month or $42 or $43 every two weeks. When traveling on the road for defendant his salary was $90 a month. The

road service was for about a year. Plaintiff went back in the warehouse and was working there at the time of his discharge.

The business agent for truck drivers and warehousemen attempted to have plaintiff reinstated, and in doing so said that Dawson claimed that when Burens was on the road he had not been honest in his dealings in several instances, and that Dawson spoke emphatically and not in a friendly way.

The testimony of manager Dawson was to the effect that he came to Kansas City as branch manager in June, 1937; that plaintiff was working in the warehouse and desired a job on the road which Dawson granted at a pay of $90 per month; that he was on the road for a short time and did not get along well and requested that he be taken back into the warehouse which was done. His work was unsatisfactory after returning and for some reason he would not co-operate with other employees, and numerous complaints were made about the way he was doing his work by other employees of the company, and that it was necessary to let him go. The manager further testified that he had worked in Pennsylvania before coming to Kansas City and had never heard of a service letter until the day when a copy of the summons and petition was served on him in this case; that plaintiff asked him for a letter of recommendation, but not a service letter, and that he told plaintiff it would be better to have his prospective employer contact him, or he would write him a personal letter and send him a copy, and that plaintiff agreed to this. He denied the testimony of Carlat that he had demanded plaintiff's discharge, but admitted that he had discussed the matter with Carlat, stating that he did not believe plaintiff was qualified for a position as a shoe salesman; that he entertained no bitterness or ill-will towards the plaintiff, but was friendly and had tried to promote and help him. There was other evidence both on behalf of plaintiff and defendant, but the above is deemed sufficient for the purpose of dealing with the points raised on appeal.

In reference to the demurrer, appellant insists that it was error for the court to submit the case to the jury and permit a verdict against the corporation after the court sustained the demurrer of Dawson, and bases its argument upon the proposition that the doctrine of *respondeat superior* should have been applied the same as it is applied in a negligence case where liability is determined from the act of the employee. A number of cases are cited announcing and applying the rule that where an employer and employee are sued jointly on account of the negligence of the employee, no verdict or judgment should be permitted to stand against the employer if the verdict is in favor of the employee. There is no question about this being the law in that class of cases. Appellant insists that the liability of the corporation does not arise out of the statute, but out of the relationship of master and servant with its employee. The true

character of the case in hand has been misconceived and the statute misconstrued. The duty imposed by the service letter statute has been held to be the duty of the corporation, acting through its superintendent or other proper officer, to issue the letter, and not the duty of such officer acting in his individual capacity. [Cheek v. Prudential Insurance Co. (Mo.), 192 S. W. 387, 391; Lyons v. St. Joseph Belt Ry. Co., 232 Mo. App. 575, 587, 84 S. W. (2d) 941.] From this interpretation it would appear that the manager could not be required to respond in damages for refusing to issue a letter of the kind described in the statute.

There is another reason why appellant's argument cannot prevail. Even though the court marked "given" the demurrer in behalf of Dawson, plaintiff dismissed suit against him and had the right to do so at any time before the case was submitted to the jury. [Pilkington v. Pilkington, 230 Mo. App. 569, 93 S. W. (2d) 1068, 1072.] There was no submission of the case against defendant Dawson; the jury never returned a verdict for defendant Dawson, and there was no adjudication exonerating him. After plaintiff dismissed suit against Dawson, he stood in the same position as though he had sued the corporation alone. There was no error in overruling appellant's demurrer for the reason assigned.

The second point is that the verdict for actual damages in the sum of $800 is excessive because it is more than plaintiff's wages would have amounted to during his period of unemployment, after deducting $100 which he earned in that period and the amount of unemployment compensation which he received. It is argued that since the amount of unemployment compensation was not shown nor considered by the jury the excessiveness of the verdict is not capable of ascertainment and the matter cannot be cured by a *remittitur*.

Defendant is not entitled to the benefit of mitigation in this case because there was no plea to that effect. The burden was on defendant to plead and prove the mitigating facts. [South Side Buick Auto Co. v. Schmitter, 5 S. W. (2d) 687; Simpson v. Ball, 145 Mo. App. 268, 272, 129 S. W. 1017, and cases cited.] Furthermore, it would not have been proper for defendant to plead and prove unemployment compensation received by plaintiff. Such compensation is not a proper subject of mitigation. It is a grant allowed according to a beneficent economic policy of the State, designed to alleviate adversity and promote the public welfare. It is not earned income of a recipient during a period of unemployment to be used in mitigation of a wrong responsible for the loss of employment. A wrongdoer cannot diminish his liability to the extent of such contributions, nor will he be permitted to benefit by payments made to the injured person from collateral sources, whether in compensation or as gratuities. [8 Ruling Case Law, sec. 105, pages 554, 555; 25 C. J. S., sec. 99, page 648.]

The jury could consider the evidence in the light most favorable to plaintiff, and within reasonable. bounds fix the loss sustained in view of all elements of damage that could reasonably be inferred. The amount awarded for actual damages did not appear to be excessive.

The court refused defendant's Instruction G, which was to the effect that plaintiff was not entitled to recover more than nominal damages. This is said to be error because there was no evidence that any person or company refused to employ plaintiff because he did not have a service letter from the appellant. Plaintiff was not barred from recovery of substantial damages for the reason assigned. He was not required to prove his case by direct and positive testimony. The facts and circumstances shown in evidence are a sufficient basis for the jury to infer and find that plaintiff was hindered and delayed in obtaining employment by the act of defendant in refusing to furnish him the service letter. [Stephens v. Lever Bros. Co., 155 S. W. (2d) 540, 542.] Plaintiff applied for such letter shortly after his discharge and was unable to obtain it. He lost about eleven months' time. He was asked at various places where he applied for work if he had a service letter. Defendant's manager failed to answer a letter of inquiry about the plaintiff from one prospective employer, and caused his discharge from the first employment that he obtained. The evidence is sufficient to support the verdict.

Plaintiff's Instruction No. 1, authorizing recovery of actual damages is said to be erroneous for the same reason given in reference to Instruction G, and because it is inconsistent with the peremptory instruction given by the court discharging defendant Dawson. What has been said heretofore disposes of these objections contrary to the contention of appellant.

Instruction No. 2 is said to be erroneous in authorizing the award of punitive damages because Dawson went out of the case. The point has been ruled. The verdict is moderate. No reversible error has been shown. The judgment should be affirmed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.