**William BUBKE, (Plaintiff) Appellant,**

v.

**ALLIED BUILDING CREDITS, INC., a Corporation, (Defendant) Respondent.**

No. 31149.

St. Louis Court of Appeals.

Missouri.

June 15, 1964.

Motion for Rehearing or to Modify Opinion or for Transfer to Supreme Court Denied July 20, 1964.

Stewart & Bruntrager, Raymond A. Bruntrager, Joseph G. Stewart, St. Louis, for plaintiff-appellant.

Suelthaus & Krueger, W. W. Sleater, III, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This appeal lately came to the writer by a very recent re-assignment. Plaintiff, a former employee of the defendant corporation, sought by this action to recover both actual and punitive damages for an alleged violation of the service letter statute, Section 290.140 RSMo 1959, V.A.M.S. Trial by jury resulted in a verdict and judgment in favor of the plaintiff for actual damages of $4000 and punitive damages of $6000. The defendant filed a motion for judgment in accordance with its motion for a directed verdict, or, in the alternative, for a new trial. The trial court overruled defendant's motion for judgment; ruled that it had erred in giving plaintiff's instruction on substantial actual damages because the evidence was insufficient to justify the submission of that issue; sustained defendant's motion for a new trial on that one specification but overruled it in all other respects; and granted defendant a new trial on the issue of damages only. Plaintiff alone appealed.

Presumably proceeding on the familiar principle that the best defense is an offense, defendant in its brief has not only attempted to answer the single point raised by plaintiff, but has mounted a two-pronged counter-attack. It contends, first, that plaintiff's appeal is premature because no final judgment has been entered; and, second, that plaintiff's action should be dismissed for failure of plaintiff's petition to state a claim upon which relief can be granted. If the petition wholly fails to state a claim then we should make a final disposition of the case by dismissing plaintiff's action. But if plaintiff's appeal is premature then, of course, we are without jurisdiction to entertain it or to pass upon plaintiff's petition, and our action must necessarily be limited to that of dismissing plaintiff's appeal. We will, therefore, consider defendant's points in their inverse order.

Civil Rule. 78.01, V.A.M.R. authorizes the grant of a new trial "on all or part of the issues after trial by jury, court or referee," as did its source, Section 510.330, RSMo 1949, V.A.M.S. Our statute on appeals, Section 512.020, RSMo 1959, V.A.M.S., permits any party aggrieved by any judgment of a trial court in any civil action to appeal "from any order granting a new trial." In Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 695, 34 A.L.R.2d 972, it was said: "We construe this language as including the instant order for a new trial as to the damages issue only. We hold that both plaintiff and defendant, as a party aggrieved by such order, was entitled to appeal therefrom." And in Page v. Hamilton, Mo., 329 S.W.2d 758, 762, it was held:

"Where, on defendant's motion after an adverse verdict, the court grants a new trial on the issue of liability only or on the issue of damages only and overrules the motion in all other particulars, the new trial ordered is in effect on the court's own motion since it is one for which the defendant did not ask in his motion and one which the plaintiff did not seek, and the court's order constitutes an order granting a new trial under section 512.020 from which both the plaintiff and the defendant, as aggrieved parties, can appeal."

Defendant attempts to distinguish the Stith case cited by plaintiff on the grounds that there both parties appealed, whereas, in the instant case defendant did not appeal. But as both of the foregoing decisions state, defendant as well as plaintiff was an aggrieved party and had the right to appeal. The fact that defendant chose not to do so cannot prejudice plaintiff's right to appeal. Either or both parties had the right to do so. Snyder v. St. Louis Public Service Co., Mo., 329 S.W.2d 721. Defendant's contention that plaintiff's appeal is premature is without merit.

■ · In his amended petition on which the case was tried plaintiff alleged that defendant was a Delaware corporation, doing business in Missouri; that he was continuously in its employ from April 11, 1949, until his discharge on March 14, 1960; that he had made a written request for a letter of dismissal as provided by the laws of the State of Missouri; that defendant failed and refused to issue to plaintiff a service letter setting forth the nature and character of services rendered by plaintiff to defendant, the duration of said services and the cause for which plaintiff was discharged; that "as a direct result of defendant's refusal to give plaintiff said letter of dismissal, said plaintiff has been embarrassed and greatly hampered in his attempt to obtain other employment"; and that the defendant's refusal to give plaintiff the letter of dismissal was willful and malicious. The prayer was for actual damages of $4000 and punitive damages of $6000. Defendant argues that the petition wholly fails to state a claim upon which relief can be granted because, in its words, *"Nowhere in plaintiff's petition does he allege loss of wages as an element of damage."* (Emphasis defendant's). Defendant has confused plaintiff's fundamental *right* to relief with the subordinate issue of the *amount* of relief. As we pointed out in Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980, no time is specified in Section 290.140 within which an employer must furnish a properly requested service letter, and the law, therefore, allows the employer a reasonable time. When that period of time expires without a letter having been furnished, a cause of action arises in favor of the discharged employee entitling him to a judgment for at least nominal damages, and punitive damages in a proper case. This for the reason that the law presumes that at least nominal actual damages have resulted from the employer's failure to supply the service letter. It is only where the discharged employee seeks to recover substantial actual damages that he must plead and prove that he was re-

fused employment for lack of a service letter. Heuer v. John R. Thompson Co., supra; Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489. Plaintiff pleaded his discharge, his request for a service letter, and defendant's failure to furnish one as of the day his suit was filed, May 2, 1960. (One was subsequently given him, as will appear). The time elapsed was sufficient to at least make a submissible issue as to its reasonableness. On its face plaintiff's petition was, therefore, sufficient to state a claim for at least nominal damages, and hence did not wholly fail to state a claim upon which *any* relief could be granted.

■ We turn then to the substance of the action and the merits of plaintiff's appeal. In that connection it should be said at the outset that the trial court granted defendant a new trial on the issue of damages only because in its opinion there was no evidence that plaintiff sought and was refused employment for lack of a service letter. Plaintiff contends that in so ruling the court erred, and that there was sufficient direct and circumstantial evidence to warrant the submission of that issue to the jury. This requires a careful review of the evidence. We agree with plaintiff that in determining the question we must view the evidence in the light most favorable to plaintiff and give him the benefit of all reasonable inferences to be drawn therefrom; and, of course, must disregard defendant's evidence unfavorable to plaintiff. Roberts v. Emerson Electric Mfg. Co., Mo., 338 S.W.2d 62.

Plaintiff's evidence was that upon his graduation from Stanford University he entered defendant's employ as a trainee on April 11, 1949. He was first assigned to the defendant's Seattle office. Over the succeeding years he was transferred to other offices, at first to Portland Oregon, and later to Birmingham, Alabama, and advanced in rank, until in April, 1953, he came to St. Louis as Office Manager. In

1956 he was promoted to the position of Manager, in charge of the St. Louis office, at a salary of $8500 per year, plus a bonus in an unstated amount. Plaintiff testified that on Friday, March 11, 1960, one C. A. Nichol, Vice-President and Comptroller and Chief Personnel Officer, arrived in St. Louis from the Company's home office in Los Angeles. He gave plaintiff no reason for his unannounced visit. Because of prior appointments plaintiff was out of his office most of the day and saw little of Nichol. He did see Nichol the next day, and again on Monday, March 14, but it was not until about 2:00 P.M. of the latter day, and after Nichol had made a long distance telephone call to R. D. Syer, the Company's President, that Nichol told plaintiff the management was dissatisfied with his performance as to profits and would not continue his employment. Plaintiff admitted that making a profit in the St. Louis office had been a problem when he came there, and had continued to be a problem during his tenure as Manager. Nichol, according to plaintiff, suggested that he offer a letter of resignation but he declined to do so because he had not resigned.

Plaintiff testified that he started to seek other employment two days after he had been discharged. Between that time and May 2, 1960, when this suit was filed, he made application with Missouri State Employment Service, answered newspaper advertisements and contacted friends and business acquaintances to request their assistance in obtaining employment. He did not confine himself to the field of installment loans and financing, in which he had been engaged while working for defendant, but also sought an administrative position. Plaintiff stated that he contacted about 40 concerns in person, by telephone, or by answering newspaper advertisements, of which number at least 20 were personal interviews. His interviews were with men in the larger St. Louis banks, and with persons in such firms as McDonnell Aircraft, Anheuser-Busch, Falstaff Brewery, Brown Shoe, and General Shoe. There is no evidence in the record that any of plaintiff's personal interviews resulted from the newspaper advertisements which plaintiff answered. To the contrary, the record indicates that plaintiff called upon friends or business acquaintances in some of such firms, or that he applied for employment on his own volition and not in response to any advertisement for help. In fact, there is nothing in his testimony or elsewhere in the record which would support an inference that the firms interviewed had positions open of the character plaintiff was seeking, nor any at the salary of $7200 to $8000 which plaintiff quoted during the interviews.

For example, one of the men with whom plaintiff had a personal interview was Mr. Paul H. Young, Vice-President of the Boatmen's National Bank of St. Louis, in charge of its Consumer Credit Division, who appeared as a witness on behalf of plaintiff. Mr. Young recalled that plaintiff called on him on Thursday or Friday of the week of March 14, seeking employment. He knew that plaintiff had worked for the defendant for several years. On direct examination he testified:

"The conversation with Mr. Bubke was, of course, directed at possible employment with Boatmen's Bank— (interruption by counsel for plaintiff)— it was explained to him that at the moment there were no openings; * *."

On cross examination he was asked and answered:

"Q. At that time, Mr. Young, were there any positions open at Boatmen's Bank in the category Mr. Bubke had experience in, or was he requesting . that—

."A. At that moment in my department of the Boatmen's Bank there was no position of the type, although, you never know when openings occur."

Mr. Young also testified on direct examination that plaintiff did not have a service letter at the time of the interview, that because of his knowledge of plaintiff he told plaintiff he would be glad to give plaintiff consideration, but that it was necessary for plaintiff to have some definite information concerning his severance, and that he asked plaintiff whether he had any sort of severance letter or letter of dismissal. Young continued, "and it was explained to me (presumably by plaintiff) that he had no knowledge of the reason for his severance." On cross-examination Mr. Young made it clear that he would never have been able to make the final decision as to employing plaintiff, had there been an opening, but only to recommend plaintiff and that he would not recommend plaintiff before he had full knowledge as to the reason for the termination of plaintiff's employment with defendant. The bank did not conduct its own investigation from former employers, Young stated, because of the cost involved. A letter of dismissal verifying the cause of dismissal, according to Young, would make a difference in making a determination.

Plaintiff testified that some of the firms he contacted seemed interested in him, but that he was not offered any position nor did he turn one down. He stated that in his numerous interviews he was never asked to produce a letter of dismissal. However, plaintiff also said that nearly all of the persons who interviewed him dealt at some length upon the circumstances of his separation. He added:

"I can't say that they didn't believe what I told them but without exception, when they showed any interest at all, instead of getting around to the matter at hand, at what I could do for them or could I get a job with them, they seemed to want to beat this horse, why I left such a good job at this point and all of that."

According to plaintiff, he remained unemployed until he obtained a position with the National Aeronautics and Space Administration of Huntsville, Alabama, on May 7, 1961, at a salary of $7560 a year.

Since plaintiff's appeal concerns only the issue of damages there is no need to relate plaintiff's efforts to obtain a service letter. It is sufficient to say that plaintiff twice requested in writing a letter of dismissal, to which letters he received answers but no service letter. It was not until May 19, 1960, more than two weeks after this suit was filed, that plaintiff received a service letter. Defendant's excuse was that it was unaware of our service letter statute.

 The rule to be applied in determining the question presented is well-established. In cases of this nature, where a discharged employee seeks to recover substantial actual damages, it is incumbent upon him to produce evidence that he sought and was refused employment by reason of his not having a service letter from his former employer. Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980; Cook v. Mid-Continent Petroleum Corp., Mo.App., 193 S.W.2d 66; Soule v. St. Joseph Ry., L., H. & P. Co., 220 Mo.App. 497, 274 S.W. 517. While the fact may be established by circumstantial as well as direct evidence, Burens v. Wolfe Wear-U-Well Corp., 236 Mo.App. 892, 158 S.W.2d 175, the circumstances must be such as will sustain the inference to be drawn, and must rise above the level of mere guess and speculation. Using those rules as our standard, we are of the opinion that the evidence together with the reasonable inferences to be drawn therefrom were not sufficient to justify the submission of the issue of substantial actual damages. It is true that plaintiff testified that he sought and obtained numerous interviews in his search for employment, and his diligence in that regard is to be commended. There is no evidence that any of such interviews resulted from newspaper or other advertisements for help, nor any indication that plaintiff had been referred to a firm by the

Missouri State Employment Service or any other agency. Many, if not most, of such interviews seemingly were with the friends and acquaintances whose assistance plaintiff solicited in seeking employment. The fatal weakness in plaintiff's case is that there was no evidence to show that at the time of his interviews any of the firms plaintiff contacted had an opening in a position for which plaintiff was qualified. Nor is there any indication that an opening subsequently occurred which was not tendered to him because of his lack of a service letter. It is obvious that unless a position was or became open there could be no failure or refusal of employment, regardless of whether or not he had a service letter. Reduced to the essentials, all that plaintiff's evidence as to the interviews show is that he applied for a position, that the reason for his discharge was discussed and explained, and that no employment was tendered him. To conclude from such evidence that plaintiff was not employed because of his lack of a service letter we would have to speculate and presume, first, that a suitable position was open; and second, that it was refused plaintiff because he had no letter. We have not overlooked the evidence regarding the interview with Mr. Young. In fact the Young incident supports our view, for he testified that at the time of the interview there was no opening, and there was no evidence that one subsequently occurred.

Plaintiff argues that the evidence showed he answered newspaper advertisements, and that there must have been jobs available because prospective employers do not spend money placing want ads for openings they do not have. We readily concede that they do not. But on that subject all that plaintiff testified to was that, "I answered inquiries in newspapers." There was no other evidence as to the nature of the advertisements, the kind of response plaintiff wrote, or whether he received a reply to any of his letters. More important, there was no evidence that the subject of his former employment or the reason for his separa-

tion therefrom arose, or that he was refused employment because he did not have a service letter. In brief, we concur with the view of the trial court that there was no evidence to justify an award of substantial actual damages and that it erred in giving Instruction No. 2.

Defendant contends that the court also erred in submitting to the jury the second paragraph of plaintiff's Instruction No. 2, relating to punitive damages, because there was no showing of actual or legal malice. The point is not inherent in plaintiff's appeal, and since defendant failed to appeal it is doubtful whether defendant is in a position to raise it. However, inasmuch as the entire issue of damages is to be retried we will consider it. Plaintiff tacitly concedes that there was no evidence of actual malice, but argues that the evidence was sufficient to justify the submission of legal malice. As plaintiff points out, he twice requested in writing a service letter and was twice refused. Defendant has committed the common error of assuming that because its witness testified to something (that they did not supply the letter because they were unaware of the statute), the jury was bound by its evidence. Of course, the jury was not bound and could accept or reject such evidence as it saw fit. Furthermore, defendant is presumed to know the law, Brown v. Wooderson, Mo., 362 S.W.2d 525; Poe v. Illinois Central R. Co., 339 Mo. 1025, 99 S.W.2d 82, and its failure to furnish the letter "cannot be excused by plea of ignorance of the law." Stephens v. Lever Bros. Co., Mo.App., 155 S.W.2d 540, 543. We agree that the evidence was sufficient to justify the submission of the issue of punitive damages on the theory of legal malice. Stephens v. Lever Bros. Co., supra; Bourne v. Pratt & Whitney Aircraft Corp., Mo.App., 207 S.W. 533; Davenport v. Midland Bldg. Co., Mo.App., 245 S.W.2d 460.

Since the issue of damages must be retried, and plaintiff will have an opportunity

to reconsider and redraft all of his instructions on that subject, it is unnecessary for us to consider defendant's complaints regarding certain alleged deficiencies in those which were given in the first trial.

The order of the trial court granting a new trial on the issue of damages only should be affirmed and the cause remanded.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, the order of the trial court granting a new trial on the issue of damages only is affirmed and the cause is remanded.

RUDDY, Acting P. J., and SAM C. BLAIR and PHIL H. COOK, Special Judges, concur.