**William E. BOOTH, Plaintiff-Respondent,**

v.

**QUALITY DAIRY COMPANY, Inc., a Corporation, Defendant-Appellant.**

No. 31889.

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Rehearing Denied Sept. 8, 1965.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, Robert N. Jones, St. Louis, for defendant-appellant.

Joseph Strubinger, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

William E. Booth instituted this action against Quality Dairy Company, Inc. in two counts. In Count I plaintiff sought to recover actual and punitive damages for defendant's alleged failure to have complied with Section 290.140, RSMo 1959, V.A.M.S., frequently referred to as our service letter statute; and in Count II plaintiff claimed that defendant was indebted to him in the sum of $557.19 and prayed for judgment for that amount, together with interest thereon. Upon a trial to a jury plaintiff was awarded $1,000 actual damages and $3,000 punitive damages under Count I, and $537.-19 under Count II. Thereafter, in response to an order of remittitur, plaintiff remitted $2,000 of the punitive damages awarded, and a final judgment was entered allowing plaintiff $1,000 actual and $1,000 punitive damages under Count I, and $537.19 under Count II. Defendant brings this appeal, but raises no issue regarding the judgment under Count II.

Plaintiff was employed by defendant in July, 1954 as a home delivery route salesman or retail milk truck driver, and continued in that capacity until he voluntarily quit, on August 4, 1959, to accept employment with the Riverview Fire Protective District as a fireman. He did not seek to obtain a service letter until May 20, 1961, when he mailed a written request therefor to defendant. For reasons which will be subsequently discussed, defendant did not respond in writing until June 20, 1961, on which date it mailed a purported service letter to plaintiff. In the interim, on June 7, 1961, plaintiff began this action. Defendant's initial assignment is that the court erred in refusing to give its requested Instruction I, by which the jury would have been told that under the law plaintiff was compelled to request a service letter within a reasonable time after he resigned from the employ of defendant, and that having failed to do so, plaintiff could not recover any damages. In support of its contention defendant points out that no time is fixed in Section 290.140 within which the request for a service letter must be made, or within which the employer must issue the letter after a proper request is made. Defendant cites Heuer v. John R. Thompson Co., Mo. App., 251 S.W.2d 980, 987, in which we said that the statute " * * * being silent as to the time within which the employer must issue a service letter, the law supplies the deficiency and allows the employer a reasonable length of time after the discharged employee makes a proper request therefor within which to issue a service letter. * * * " From this, defendant argues that the "same necessity" which demanded the holding in the Heuer case requires us to hold in this case that the former employee must make his request for a service letter within a reasonable time after his employment terminates.

◼ We cannot agree that the situations are analogous, or that the basis for the principle announced in the Heuer case is likewise present in the instant case. The first part of Section 290.140 places a duty upon the employer to issue a service letter when a proper request is made, and gives the former employee a right of action upon the employer's *refusal* or *failure* to do so. Cheek v. Prudential Ins. Co. of America, Mo., 192 S.W. 387, L.R.A.1918A, 166; State ex rel. Terminal R.R. Ass'n of St. Louis

v. Hughes, 350 Mo. 869, 169 S.W.2d 328. If the employee's request is met with an outright refusal his cause of action, of course, arises immediately. But what period constitutes a failure to issue the requested service letter, and how much time must elapse before a cause of action for failure to issue arises in favor of the employee? As to this, the statute is silent. Of necessity, the employer must be given *some* time in which to fulfill his duty, for the employee should not be permitted to present his written demand one minute and file suit the next. It was with this problem in mind that we held in the Heuer case that the employer must be allowed a *reasonable* length of time in which to comply with the former employee's proper request, and that the employee's cause of action does not arise until such a period has expired. There is, however, no corresponding duty placed upon the former employee by the statute to make a request. He may, if so inclined, never request a service letter, in which event no duty arises upon the part of the employer to furnish one. Nor is there any language in Section 290.140 which by necessary implication indicates that the employee's request must be made within a reasonable time after his employment terminates, as was said of Section 290.110 in Monterosso v. St. Louis Globe-Democrat Publishing Co., Mo., 368 S.W.2d 481. To hold as defendant contends would require us by judicial legislation to write in to the statute a special limitation on the employee's right of action where none exists. In the Heuer case the "necessity" to which the defendant refers impelled us to furnish the employer with a shield as a protection against premature actions; but there is no corresponding reason why we should furnish him with a sword with which he may destroy an employee's legitimate cause of action.

 Defendant next contends the evidence did not show that plaintiff was declined employment for lack of a service letter, and that there was no basis in the record for the award of substantial actual damages. In cases of this nature the rule is well-established that to recover substantial actual damages it is incumbent upon the plaintiff to produce evidence that he sought and was refused employment because he did not have a service letter from his former employer. Bubke v. Allied Building Credits, Inc., Mo.App., 380 S.W.2d 516; Heuer v. John R. Thompson Co., supra; Cook v. Mid-Continent Petroleum Corp., Mo.App., 193 S.W.2d 66. While the fact may be established by circumstantial as well as direct evidence, Burens v. Wolfe Wear-U-Well Corp., 236 Mo.App. 892, 158 S.W.2d 175, the circumstances must be such as will sustain the inference to be drawn, and must rise above the level of mere guess and speculation. Bubke v. Allied Building Credits, Inc., supra. In determining the question presented we will view the evidence in the light most favorable to plaintiff, give him the benefit of the reasonable inferences to be drawn therefrom, and, of course, disregard defendant's evidence unfavorable to plaintiff. Roberts v. Emerson Electric Manufacturing Company, Mo., 338 S.W.2d 62.

Most of plaintiff's direct examination was concerned with the dispute which developed between plaintiff and defendant over plaintiff's accounts and plaintiff's efforts to collect what he claimed was due him, which was the subject of Count II. All that he testified to regarding the matter on appeal was that he had already obtained employment with the Riverview Fire Protective District at the time he submitted his letter of resignation, effective as of August 4, 1959; that he was still so employed at the time of trial; that he requested a service letter on May 20, 1961 because he wanted to secure part-time work in addition to his employment as a fireman; and that in a telephone conversation with Vincent Sanders, defendant's credit manager, on May 27, 1961, Sanders told him it was not company policy to issue a service letter and suggested that plaintiff have prospective employers telephone him. Not one word was mentioned on direct examination regarding any efforts plaintiff may have made to obtain part-time work, and, curiously

enough, that feature of the case was first broached by defendant's counsel on cross-examination. In brief, plaintiff reiterated his desire to use the letter to obtain part-time employment, particularly as a tile layer's helper. He admitted that he had started to look for such work before he mailed his request for a service letter, and stated that in January, 1961 he applied to and obtained such employment from Elliott Installations, which continued for a couple of months. Plaintiff also testified on cross-examination that he applied for part-time work at Tile Town, Stix Baer & Fuller, the Spanish Lake Fire Department, and Elliott Installations, but the time when such applications were made was not definitely fixed. Perhaps the nearest approach to any date occurred when defendant's counsel asked:

"Q You think not. Well, did you apply to any other places for work or jobs? We are talking about this end of it here, in addition to what I mentioned.

"A From. then or until now, or that two month period? I want to get the period you are talking about.

"Q Well, up to the time your deposition was taken which was the 21st of July, 1961? A Yes, yes, yes.

"Q Did you? A Yes.

"Q Where else did you apply? A Did I mention Stix there?

"Q Yes. A And Elliott Installations and Tile Town?

"Q Yes. A I can't think of any more offhand, Judge, jury.

"Q Well, taking your deposition, when you were asked if you applied anywhere else you said no. That was right? That's correct, is it?

"A Yes."

While the "then" in plaintiff's first answer was not otherwise determined, counsel had previously been using the conversation plaintiff had with Sanders on May 27, 1961 as a point of reference regarding time, and the inference may be drawn that plaintiff had that date in mind when he used the word "then." Assuming, therefore, that such efforts to obtain part-time employment were made after the conversation with Sanders, the weakness in plaintiff's case is that he testified that in each instance the prospective employer to whom he applied for work never asked him for a service letter from defendant. For example:

"Q Well, did you look anywhere else for a job—any kind of job full or part-time about that time?

"A About that time I think I applied at Stix.

"Q Stix, Baer & Fuller? A I believe so.

"Q For what kind of work? A Sales work.

"Q And did they ask you for a job—Or for a service letter? A No."

Thus plaintiff's own testimony, by which he is bound, clearly showed that he had not been refused employment for lack of a service letter, and the evidence was therefore insufficient to sustain the award of substantial actual damages. Bubke v. Allied Building Credits, Inc., supra; Cook v. Mid-Continent Petroleum Corp., supra. It follows that the judgment for more than nominal actual damages for the invasion of plaintiff's legal right cannot be allowed to stand. Heuer v. John R. Thompson Co., supra; Cook v. Mid-Continent Petroleum Corp., supra.

Defendant also contends that the evidence was insufficient to justify the submission to the jury of the issue of punitive damages. Plaintiff's submission, it should be said, was on the theory of legal malice. As to this feature of the case the evidence showed that the written request of May 20, 1959 which plaintiff mailed to defendant was referred to Sanders, and that, as previously

stated, Sanders telephoned plaintiff on May 27. There was a sharp dispute in the testimony regarding what was said during that conversation. Plaintiff's version, in brief, was that Sanders told him that his request for a service letter had been received, and asked why plaintiff wanted such a letter. Plaintiff replied that he wanted it so that he could obtain part-time work as a tile layer's helper. Sanders then said, according to plaintiff, that it was not the defendant's policy to issue such letters and suggested that plaintiff have prospective employers telephone him. Plaintiff protested, saying, "* * * 'Mr. Sanders, I still want that service letter.' * * *" Sanders, who had been in the employ of defendant for 28 years as credit manager, testified that at the time he received plaintiff's request he did not know "there was such a thing as a service letter," and was unaware of the law making it the duty of an employer to furnish such a letter. His explanation was that he thought that by asking for a "service letter" plaintiff was requesting a letter of recommendation, and that he prepared one for the signature of Richard Aubuchon, defendant's retail route sales manager; that he telephoned plaintiff to ascertain whether plaintiff wanted the letter of recommendation addressed to a particular prospective employer, rather than "To Whom It May Concern"; that he inquired of plaintiff whether he was still with the fire department or was taking another job; that plaintiff told him he was keeping his job with the fire department but wanted to do some tile business on the side; that he then informed plaintiff that plaintiff didn't need a letter of recommendation, what he needed was a credit reference to buy tile; that he advised plaintiff to "'* * * Tell the tile people to call us and we will be glad to give you credit reference' * * *"; and that plaintiff said that was Okay with him. On rebuttal, plaintiff denied that he told Sanders he was going into the tile business, and denied that Sanders made any mention of a credit reference.

In its argument regarding the claimed insufficiency of the evidence defendant commits the common error of ignoring the evidence favorable to the plaintiff, and of assuming that its own evidence was conclusive as a matter of law. Sanders' testimony regarding his version of the telephone conversation was not only not conclusive as a matter of law, but the jury was entitled to reject all or any part of it. Bubke v. Allied Building Credits, Inc., supra. Plaintiff testified that following his written request for a service letter Sanders telephoned him and told him that it was contrary to the defendant's policy to issue such letters and suggested that plaintiff have prospective employers telephone him. By plaintiff's Instruction No. 1 the jury was required to find, and by its verdict it did find, that thereby defendant refused, and intended to refuse, to issue a service letter to plaintiff. We hold that under the authorities such evidence was sufficient to justify the submission to the jury of the issue of punitive damages on the theory of legal malice. Roberts v. Emerson Electric Manufacturing Co., Mo., 338 S.W.2d 62; Bubke v. Allied Building Credits, Inc., supra; Stephens v. Lever Bros. Co., Mo.App., 155 S.W.2d 540; Bourne v. Pratt & Whitney Aircraft Corp. of Mo., Mo.App., 207 S.W.2d 533; Davenport v. Midland Bldg. Co., Mo.App., 245 S.W.2d 460.

Alternatively, defendant also contends that if its defense to the claim for punitive damages was not sufficient as a matter of law, it was sufficient to require submission to the jury; that it endeavored to submit its defense by offering Instructions D, E, and F; and that the court erred in failing to give at least one of them. For reasons which need not be discussed we are of the opinion that Instructions D and E were erroneous and that the court did not err in refusing to give them. But we believe that defendant is on firmer ground regarding the refusal to give Instruction F. While the instruction is no model, it told the jury, in substance, that if it found that

Sanders had no knowledge of the law which required defendant to furnish a service letter, and that he acted in good faith and in the honest belief that his actions respecting the letter were lawful, then it could not find that he acted wrongfully and without just cause and excuse, and could not allow plaintiff punitive damages. Legal malice, the theory upon which plaintiff submitted his claim for punitive damages, is defined as the intentional doing of a wrongful act without just cause or excuse. Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, 37 L.R.A.,N.S., 533; State ex rel. United Factories, Inc. v. Hostetter, 344 Mo. 386, 126 S.W.2d 1173. Lack of knowledge of the law and good faith may not be a defense to the employee's claim for actual damages resulting from the employer's violation of his statutory duty to furnish the requested service letter. Roberts v. Emerson Electric Manufacturing Co., Mo., 338 S.W.2d 62; Bubke v. Allied Building Credits, Inc., supra. But as was said in Hall v. St. Louis-San Francisco R. Co., 224 Mo. App. 431, 28 S.W.2d 687, 691, "The party must know that the act is wrongful and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act." To the same effect see Lampert v. Judge & Dolph Drug Co., supra; Thomas v. Commercial Credit Corp., Mo.App., 335 S.W.2d 703; Franta v. Hodge, Mo.App., 302 S.W.2d 291; Patrick v. Employers Mut. Liability Ins. Co., 233 Mo.App. 251, 118 S.W.2d 116; Bean v. Branson, 217 Mo.App. 399, 266 S.W. 743. By refusing to give Instruction F the court deprived defendant of the right to submit to the jury its defense to the claim for punitive damages, and in so refusing, it erred.

Other matters complained of by defendant can be considered and remedied by the plaintiff where necessary on a retrial of the case.

For the reasons stated the judgment should be affirmed as to Count II and should be reversed and the cause remanded for a new trial as to Count I. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed as to Count II and reversed and the cause remanded for a new trial as to Count I.

ANDERSON, (Acting) P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.