Melvin BONDS and Thyra Bonds, a/k/a
Thyra Bonds, His Wife, Plain-
tiffs-Appellants,

v.

CITY OF WEBSTER GROVES, Defendant-
Respondent.

No. 33172.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1968.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Oct. 23, 1968.

Application to Transfer Denied
Dec. 9, 1968.

Librach & Heller, Robert L. Brown, St. Louis, for plaintiffs-appellants.

Daniel, Raskas, Ruthmeyer & Schneider, H. Jackson Daniel, Bernard A. Ruthmeyer, St. Louis, for defendant-respondent.

ANDERSON, Presiding Judge.

This is an action brought by Melvin Bonds and Thyra Bonds against the City of Webster Groves, and Webster Groves Industrial Corporation. The case was tried on an amended petition which was in two counts. Count I was for a declaratory judgment seeking a ruling that a Zoning Ordinance of said City was invalid, and for an injunction against Webster Groves Industrial Corporation from preparing the land in the zoned area for use other than residential. Count II was directed against the City, and sought damages on account of alleged depreciation of the market value of their property as a result of the acts of said defendant. The case was tried before the Honorable Franklin Ferriss. The Court, at the close of plaintiffs' case dismissed the action against said defendant Webster Groves Industrial Corporation, and after the close of the whole case found against plaintiffs and in favor of defendant City of Webster Groves on Count I and Count II of plaintiffs' petition; judgment was entered accordingly. From said judgment, plaintiffs appealed to the Supreme Court. Thereafter, respondent filed its motion in the Supreme Court to transfer the case to this Court for lack of jurisdiction. This motion was sustained and the cause was transferred, and is properly here for final disposition.

The petition alleged that defendant, City of Webster Groves, was a municipal corporation organized and existing under and by virtue of the Laws of the State of Missouri; that plaintiffs were the owners of real estate located in said City; that said property was zoned as residential, and was located within a tract of land triangular in shape which tract of land was bounded by Kirkham Avenue on the West, by Atlanta on the North, Lafayette Avenue on the East and by the South line of Bennie Gordon's Subdivision on the South; that on October 6, 1964, the City, by Ordinance No. 6348, rezoned said triangular tract of land except for plaintiffs' property, being Lot 13 of Bennie Gordon's Subdivision and by said Ordinance vacated Marvin Court, the street upon which plaintiffs' property faces, East Avenue, Cannaday Avenue and Tuxedo Boulevard between Kirkham and Lafayette Avenues; that said rezoning Bill was passed in violation of Section 11.3 of the City Charter in that said City failed to give at least seven days notice prior to the first hearing of the proposed amendment, modification or revision, stating the time and place of the hearing, to the last known place of abode of the owners of all property lying within 185 feet of the property under consideration; and that plaintiffs' property was contiguous with the tract of land rezoned by Ordinance No. 6348.

It was further alleged that said Ordinance violated plaintiffs' constitutional rights under the Fourteenth Amendment to the Constitution of the United States, as well as Article I, Section 10 of the Missouri Constitution, in that it deprives plaintiffs of due process of law; that said Ordinance is unconstitutional and void on the general ground that it does not bear a substantial relationship to the public health, safety, morals and general welfare, and is out of harmony and in conflict with the comprehensive zoning ordinance of the defendant municipality, in that it zoned said irregular tract of land around plaintiffs' property, that it is illegal, arbitrary, unreasonable and discriminatory, that it violates plaintiffs' property rights and lowers the value of plaintiffs' property, thus depriving plaintiffs of property without due process of law.

It was further alleged that Webster Groves Industrial Corporation was beginning to develop the land and baring it of its natural growth, thereby subjecting plaintiffs' property to loss of market value, as well as damage from surface water

runoff, and that there will be further damage in the future to the market value of plaintiffs' property. As to the City of Webster Groves, there was a prayer for a judgment declaring said Ordinance to be invalid.

Count II of the petition alleged that a direct and probable consequence of the acts of the defendant, City of Webster Groves, plaintiffs had suffered a loss in value of their property in the sum of $25,000.00 for which sum they prayed judgment.

Defendant, City of Webster Groves, in its answer to Count I of the petition, admitted all allegations of the petition directed at it, except the allegation that the ordinance in question violated Section 11.3 of the City, and of the allegation that plaintiffs were deprived of their constitutional right of due process of law under the State and Federal Constitution as set forth in the petition, which allegations were specifically denied. As an affirmative defense, it was alleged in said answer that plaintiffs waived the notice requirements of the City Charter by their attendance at all hearings concerning the adoption of said Ordinance, and was estopped from attacking the validity of said Ordinance by attending in person or by attorney all said hearings and presenting their views as to said Ordinance. It was further alleged that plaintiffs were not damaged by any failure if any to give notice as provided in the Charter for the reason that plaintiffs had actual notice of all proceedings with reference to the adoption of the Ordinance, and thus had an opportunity to be heard and were in fact heard on the question of the adoption of said Ordinance.

In its answer to Count II, defendant City, after incorporating by reference the allegations in its answer to Count I, denied generally each and every allegation in said second Count.

Plaintiffs are husband and wife. They are owners of Lot 13 of Bennie Gordon's Subdivision. The property faces on Marvin Court, and is the only house completed in said subdivision. As originally planned, Marvin Court was to run from Kirkham Avenue through the subdivision eastwardly to Lafayette Avenue, a north and south street. The street though dedicated was never extended westwardly from Lafayette Avenue beyond plaintiffs' property for the reason that the subdivision development was abandoned. Plaintiffs' house was the only house built in the subdivision. Their house is located within a triangular shaped area, bounded by Kirkham on the West, Atlanta on the North, Lafayette on the East and on the South by the South line of Bennie Gordon's Subdivision. It is located in the right angle corner of the southeast boundary of said area. Marvin Court runs in front of plaintiffs' house to Lafayette where it ends. It is the only street over which plaintiffs have access to their property. Mrs. Bonds, in her testimony, referred to Marvin Court as a driveway, which was put in by the City at plaintiffs' expense. She also stated she understood that the City vacated Marvin Court and that half of it reverted to plaintiffs as adjacent property owners. There is some indication in the record that Marvin Court was thereafter 20 feet wide.

Plaintiffs purchased their property in January 1957. The purchase price was $16,500.00. The triangular shaped area in which plaintiffs' house is located contains 13 acres. At the time plaintiffs purchased their property there were 15 or 17 other houses in the area which were occupied. According to plaintiffs' witness, Ted Horowitz, a real estate dealer and expert appraiser, these houses were in a delapitated and run down condition. Many of them lacked indoor plumbing facilities. Defendant's witness, Tom McReynolds, an appraiser and member of the American Institute of Real Estate Appraisers was a witness for the defendant. He testified that the other houses and yards in the area were small and poorly kept, and that the area was blighted; that some people would regard the area as a slum. Milton Brand,

who was the director of the Land Clearance Redevelopment Authority of Webster Groves gave like testimony. He stated, "In short you might say it was a group of homes, single family homes, that had no material direction in the building of them. It was sort of a hodge-podge of building efforts—adding on, sometimes subtracting, and in cases where the exterior wasn't in such good condition they would put stucco on them, which would hide a lot of defects of the house itself * * * we declared it a blighted area, which it was." The witness also testified: "Q. You have rehabilitated a large number of homes in this project area? A. Oh, yes, a great many. Q. But on this 13-acre tract were you able to rehabilitate any home? A. No * * * Each had to come down, and any homes we thought we could move, we made an attempt to move them, and this is why I can qualify the statement of the stucco. We found what was inside; the houses fell apart, they were built in sections, and we couldn't move them; we tried to. Q. The yards were overgrowth of shrubbery and bushes? A. Yes * * * they were not well maintained."

It is not clear from the evidence just when this area was cleared by the Land Clearance Authority, but it was during the early nineteen sixties, and prior to the enactment of Ordinance No. 6348 on October 6, 1964. Prior to the latter date, the triangular area including plaintiffs' property was zoned residential. The matter of rezoning was first submitted to the City Plan Commission. Said Commission held a public hearing with reference to this on May 11, 1964. The results reached at that meeting are set forth in a letter written by the secretary of the Commission addressed to the Mayor and City Council. This letter was introduced in evidence by defendant. There was no objection to it by plaintiff. It reads as follows:

"At the regular meeting of the City Plan Commission held on Monday evening, May 11, 1964, a Public Hearing was held on the application of the Land Clearance for Redevelopment Authority to rezone to 'E' industrial the following described property:

" 'A triangular tract of ground bounded by Kirkham Avenue on the west, by Atlanta Avenue on the north, by Lafayette Avenue on the east, and by the south line of Bennie Gordon's Subdivision on the south; except lot 13 of Bennie Gordon's Subdivision.'

"A request to vacate East Avenue, Cannaday Avenue, Marvin Court, and Tuxedo Blvd. between Kirkham Avenue and Lafayette Avenue was also a part of this application.

"After the hearing and due consideration the Commission voted unanimously to recommend that this application be approved with the provision that any property conveyed to Melvin Bonds and wife (Owners of lot 13 of Bennie Gordon's Subdivision) by the Authority and which is presently contiguous to the Bond property be excluded from this rezoning. This favorable recommendation also applies to the requested vacation of East Avenue, Cannaday Avenue, Marvin Court, and Tuxedo Blvd. between Kirkham Avenue and Lafayette Avenue."

The last mentioned streets ran through the area from Kirkham Road to Lafayette Avenue.

Section 11.3 of the Charter of the City of Webster Groves provides that "at least seven (7) days prior to the first hearing on any proposed amendment, modification or revision, the Commission shall send a written notice, briefly describing the proposed amendment, modification or revision and stating the time and place of the hearing, to the last known place of abode of the owners of all property, according to the City records, adjacent to or lying within 185 feet of all boundaries of the property under consideration."

Plaintiffs were not notified of the meeting of the City Plan Commission held May 11, 1964, but the minutes of the meeting

which were introduced into evidence by defendant, show that Mrs. Bonds was present at said meeting. These minutes recite that: "Mrs. Melvin Bonds who lives at 15 Marvin Court made the request that 50 feet west of their property and 25 feet of the street be left vacant to protect their property or that this amount of land be given them." Mrs. Bonds testified as follows: "Q. Do you know an attorney named Joseph Lott? A. Yes, sir. Q. Did you authorize him to appear for or with you before the City Plan Commission and/or the City Council in connection with this particular tract of land? A. Yes, sir. Q. Do you know he was present with you or on your behalf or addressed communications to the City on nine separate occasions at nine separate meetings where he was present? A. I have no idea how many. Q. These hearings commenced in June and terminated in November, which would be a total of twelve meetings. Do you remember how many of them you attended? A. I would say three or four. The Court: What kind of meetings are you taking about now? A. It is my understanding he's speaking of the City Council meetings."

There was a meeting of the City Council on July 7, 1964, at which time the rezoning ordinance was considered. The minutes of that meeting show that Joseph Lott appeared before the Council, stating that he was an attorney representing Mr. and Mrs. Melvin Bonds who wished to oppose the passage of the ordinance. The minutes further show the objections advanced by Mr. Lott. These as set out in the minutes were "that they (Bonds) feel such rezoning would be discriminatory to them in that it would leave them in an island. They will suffer depreciation in the value of their land, and there is a problem of sewers. They have no street to get into their driveway. They have a water problem in the basement of their home and are unable to erect a retaining wall on the property they now own because of lack of sufficient foot-age." The minutes further show that after a discussion of plaintiff's problems further consideration was deferred until the next regular meeting of the Council.

Defendant's Exhibit 5–A, being minutes of a meeting of the City Council held on August 18, 1964, was introduced by defendant, no objection being interposed by plaintiff. At this meeting the rezoning bill was again considered. Mr. Lott was present representing Mr. and Mrs. Bonds, and again voiced objections to the proposed ordinance. Mrs. Bonds was also present and took part in the discussion.

At the next meeting of the City Council held September 15, 1964, the consideration of the rezoning bill was, at the request of Mr. Lott, again deferred until the next meeting of the Council.

The next meeting of the City Council was held October 6, 1964. Mr. Lott was present and stated among other things that if the ordinance was passed it would not be fair to the Bonds; that they would strenuously object and possibly contest it in the Courts. After further discussion, the matter was brought to a vote, and the ordinance passed.

Mr. Horowitz testified that in his opinion the value of plaintiffs' land before the rezoning was $3,000.00, and the value of the improvements at said time was $13,700.00. He further testified that subsequent to the rezoning he estimated the value of the land at $5,250.00, and the value of the improvements at $750.00. He stated the damage attributable to the rezoning was therefore $10,700. He further stated that he was not qualified to give an opinion as to the highest and best use of the 13 acre tract, but the highest and best use of plaintiffs' property would be industrial if the rest of the 13 acre tract was zoned industrial. He further testified that the highest and best use of plaintiffs' property could be residential if the whole 13 acre tract was zoned residential.

Mrs. Bonds testified that plaintiffs' real estate, as improved, had a value of $16,000.00 to $17,000.00 prior to the rezoning, and that as a result of the rezoning its value was reduced to approximately $6,000.00. On cross-examination, she testified that the opinion was not her own, but was based on the opinion of someone else; that she was not qualified to make an appraisal.

Mr. McReynolds testified the clearing of that part of the 13 acre tract which was later rezoned industrial, would result in an improvement in the value of plaintiffs' property, and would generally upgrade the value of all homes in the neighborhood. He further testified that the act of rezoning would have no measurable effect on the value of the Bonds' property; that, although he had never seen the inside of plaintiffs' house, its value was somewhere between $16,500.00 and $17,000.00; that he would say that if there was a change in value since the clearance and rezoning it would be a slight increase, but he was not prepared to say how much; and that in his opinion the clearance and rezoning had not adversely affected the value of the Bonds' property

Mr. McReynolds further testified that the value of any property depends upon its highest and best use; that if plaintiffs' land was vacant, the highest and best use would be industrial, because the land next to it is zoned industrial, and that industrial is usually worth more than residential. He further stated that plaintiffs' lot was improved with a very handsome house which made it inconceivable to him that the highest and best use would be industrial; that the highest and best use was residential and therefore it would take a residential land value.

On cross-examination, Mr. McReynolds was interrogated about the effect on the value of a house such as plaintiffs if industry moved into an adjacent area zoned industrial. His answer was as follows: "This would depend on several things. First, on what type industry moved in there,

how far away it was from the Bonds' house and what type of screening material was between the Bonds' house and the industry that moved there. I don't think you can say it will have a detrimental effect just because it's been changed to industrial use. You have to wait to see what kind of industry goes there."

Newport Avenue, which runs east from Kirkham, is the first street south of the 13 acre tract. To reach Kirkham, plaintiffs can travel over Lafayette to Newport then turn right and proceed westwardly over Newport to Kirkham. The yards in the rear of the houses on the north side of Newport abut the 13 acre tract in question. There are ten or twelve of these homes. They are one and two stories in height, and are two and three bedroom homes. They are twenty to thirty years old, and range in value from $15,000.00 to $20,000.00. They are in an area zoned residential There are a great many single-family houses east of Lafayette across from the 13 acre tract. These houses are also in an area zoned residential. Where Atlanta and Kirkham meet, there is a small commercial building and across Kirkham at that intersection is a package liquor store, and farther down Kirkham, opposite the 13 acre tract, there is a new commercial area on land of the Land Clearance Authority. On the east side of Kirkham and within the 13 acre tract is a gasoline filling station. Kirkham is a three or four lane street as it passes the 13 acre tract. Witness, McReynolds said it was "a pretty good street to drive on" and that the traffic conditions during the day and during rush hours "isn't bad. Sometimes you have to wait thirty seconds or so to get out of Newport into Kirkham." He described Atlanta as "a pretty bad street" and Newport as "too narrow for the traffic it carries." Lafayette is a two lane blacktop street. Mr. McReynolds stated that Lafayette like all streets in Webster Groves "leaves a great deal to be desired."

Appellants, in their brief, under the heading "Points and Authorities," present

their points relied on as follows, omitting the authorities cited:

"I

"This Court reviews the evidence, de novo, on an appeal from an equity case.

"II

"The Court erred in allowing into evidence the minutes of the meeting of the planning commission of April and May 1964.

"III

"A municipal corporation derives its authority to zone real estate situated within its political boundaries from the Missouri Revised Statutes, 1959, 89.010 V.A.M.S.

"IV

"The Court erred in affirming the ordinance in that notice is mandatory and one is not estopped by appearing at a meeting of which notice was to have been given.

"V

"Zoning must bear a substantial relationship to the public health, safety, morals or general welfare.

"VI

"Appellants are entitled to damages due to the irregular and unlawful manner by which respondent enacted its zoning ordinance."

By Civil Rule 83.05(e) V.A.M.S., it is provided:

"The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed. Setting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule."

 Points I, III and V violate the rule in that they are abstract statements of law. Therefore they present nothing for review. Point II plainly ignores the rule in that it fails to state any reason why the ruling of the Court is claimed to be erroneous. This is a violation of the rule and therefore presents nothing for review. See Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158, l.c. 166.

 We are not unmindful of the express authority under Rule 83.09 to except from the provisions of Rule 83.05(e) any non-compliance with its terms upon a showing that justice so requires. Upon examination of the record and appellants' brief, we do not find sufficient grounds to justify an exception in this appeal.

Point IV is by its terms vague, but we have determined to review the matter sought to be raised. In order to determine its meaning we look to the argument portion of appellants' brief. It appears therefrom that the point urged is that the ordinance is void because plaintiffs were not given notice of the open meeting of the City Plan Commission at the time the ordinance in question was considered, and that although Mrs. Bonds was present at the meeting, plaintiffs are not estopped to urge the invalidity of the ordinance due to the fact that no effective recommendation was ever made by the Planning Commission by reason of the lack of notice.

 The purpose of notice in such cases is to afford persons interested an opportunity to be heard. In this case, Mrs. Bonds

not only had actual knowledge that the hearing would be held, but was actually at the meeting representing her interest and that of her husband. Furthermore she actually was heard. She voiced no objection to the failure to give notice at said meeting or at the meetings thereafter of the City Council which she and plaintiffs' attorney attended. Under these circumstances, plaintiffs are in no position now to complain of the failure of defendant to give said notice. State ex rel. Luechtefeld v. Arnold, Mo.App., 149 S.W.2d 384.

■ The basis of plaintiffs' complaint under Point VI is that they are entitled to recover as damages the loss in value of their property by reason of the rezoning ordinance. There is no merit to this contention. Zoning Ordinances are enacted under the police power delegated to the City by the State. The exercise of this power is a governmental function, and if plaintiffs suffered a loss in value of their property by the passage of the ordinance, such wrong, if any, is not one for which relief can be afforded under the law. Plaintiffs are abutting property owners. They do not contend there is any physical taking of their property, nor is there any evidence from which it can reasonably be inferred that by said ordinance the City has in anyway invaded or appropriated any valuable property right which plaintiffs had in the use of their property. Plaintiffs' permissible use of their property has not in anyway been reduced. Under the law, the incidental loss suffered cannot be considered a taking of the property for which compensation must be made. This is a sound rule based upon public policy. See Hill-Behan Lumber Co. v. State Highway Commission, 347 Mo. 671, 148 S.W.2d 499; Higbee v. Chicago B. & Q. R. Co., 235 Wis. 91, 292 N.W. 320, 128 A.L.R. 734.

The judgment of the trial court is affirmed.

RUDDY and WOLFE, JJ., concur.