Adolph M. ROTERMUND,
Plaintiff-Appellant,

v.

BASIC MATERIALS COMPANY, a
Missouri Corporation,
Defendant-Respondent.

No. 37117.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 26, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Application to Transfer Denied
Oct. 11, 1977.

James L. Sullivan, Sullivan & Evans, St. Louis, for plaintiff-appellant.

Coburn, Croft, Shepherd & Herzog, Thomas L. Croft, John R. Musgrave, St. Louis, for defendant-respondent.

JOHN L. ANDERSON, Special Judge.

Appellant, Adolph M. Rotermund, as plaintiff, commenced these proceedings in the Circuit Court of the City of St. Louis. Originally there were three counts and three defendants. These actions were removed by defendant, United States Steel Corporation, to the United States District Court where Counts I and II were adjudicated. *Rotermund v. United States Steel Corp.*, 346 F.Supp. 69 (E.D.Mo.1972). Count III, however, was remanded to the state courts as it involved construction of the

Missouri Service Letter Statute, § 290.140 RSMo.1969, i. e. whether the letter furnished to appellant complied with the purpose, intent, meaning and language of that statute, and for the further reason that diversity jurisdiction was not involved in that Count. *Rotermund v. United States Steel Corp.*, supra. Count III was tried before a jury in the Circuit Court of the City of St. Louis between January 27th and January 31st, 1975. A motion for a directed verdict was filed at the close of plaintiff's case and denied by the court. The submission below resulted in a verdict in favor of appellant for damages in the sum of one hundred thousand dollars ($100,-000.00).

Thereafter respondent filed a motion for judgment in accordance with its earlier motion for directed verdict, or in the alternative, to amend the judgment to reduce it to one dollar ($1.00) or in the alternative, for a new trial. The trial court on April 30, 1975, sustained the motion to amend judgment to one dollar ($1.00), set aside the jury verdict and entered judgment for that amount.

Appellant was employed by Basic Material Company (Respondent) on July 1, 1954 and continued in its employment until July 31, 1971, at which time he was discharged. On August 9, 1971, the board of directors removed appellant from the office of secretary to the corporation and the shareholders thereafter relieved him as a director.

Appellant's duties with respondent were those of an accountant and assistant office manager. Appellant enjoyed a good working relationship with his employer and its management through nearly all of his seventeen years of employment. In 1965, Raymond Powell, president and managing officer of respondent, entered into a stock option purchase agreement with the United States Steel Corporation. By virtue of certain provisions of this agreement appellant, among others, became a third party beneficiary with U. S. Steel agreeing, upon the happening of certain well defined contingencies, to buy shares of stock subscribed by respondent and owned by appellant. This agreement was amended in 1968. For

a more detailed discussion of the terms of these agreements see *Rotermund v. United States Steel Corp.*, supra. In the spring of 1971 respondent was experiencing financial difficulties and was about to engage in delicate negotiations with one of its shareholders and principal creditors, U.S. Steel Corp., concerning a possible debt moratorium.

The stage thus set, appellant called upon U.S. Steel to purchase the stock owned by him that was the subject of the Powell-U.S. Steel agreement. Unbeknownst to the management of respondent appellant dispatched his attorney to Pittsburg to press his claim believing that he had rights under these agreements. Appellant threatened U.S. Steel with suit. Needless to say, appellant incurred considerable displeasure from respondent's principal stockholder and president, Raymond Powell. Prior to pressing U.S. Steel appellant had attempted to reach an understanding with Powell regarding the purchase of appellants stock by him. These negotiations were fruitless.

The differences thus engendered culminated in appellant's discharge. Appellant next requested a statutory service letter. Respondent replied on August 10, 1971, and that letter is the basis upon which the issue of liability was joined in this suit. Appellant contended that the service letter was deficient both as to its description of the nature and character of his services to respondent and the cause of his discharge. The issues upon which liability must be predicated were submitted by the trial judge and are not directly in issue on this appeal. For purposes of this review it is sufficient to say that appellant made his case on the issue of liability. Hence, we need not detail the letter or belabor evidentiary matter other than that pertaining to damages.

Following his discharge appellant sought other employment vigorously through numerous applications, but it is only with regard to one prospective employer, Edward T. Higgins (hereinafter referred to as Higgins), that we need exercise close scrutiny to determine if appellant proved actual substantial damage and supplied a reasonable basis from which a jury could calculate loss.

The submissibility of substantial actual damages rests entirely upon the testimony of Higgins. Higgins was not acquainted with appellant and appellant did not personally approach him seeking employment. Rather, appellant's attorney, Mr. Sullivan, who had had a long association with Higgins asked him is he could help appellant in any way. Higgins responded that he could use a man of appellant's caliber "because of the fact that we were having numerous reorganization at Slay's" (Slay Industries) where Higgins was comptroller, and, "then, also, I had another accounting service." Higgins indicated he needed someone. He testified that initially he and Sullvian talked generally about appellant's capabilities, but that he would need an explanation for appellant's termination by respondent. Later he would need more particulars after he saw the termination letter. Mr. Sullivan produced the service letter of August 10, 1971. Higgins testified that he formed "judgments both about appellant and the letter." As to the letter, he testified he could find nothing particularly stating why appellant had been terminated and that he never did learn the cause. Higgins testified he could not use the letter to give to anybody for reference. Asked if he had positions available that would suit Mr. Rotermund's circumstances, background and education, Higgins replied: "Yes, I could have used him within dollar areas of maybe fifteen to twenty, twenty-five thousand, depending upon the client and the place I wanted to put him, because I had numerous clients that I still maintained contact with, even though I didn't do the work." Higgins then testified: "[T]he letter, as such indicated to me that I didn't see any reason to spend my time or waste my time in looking at resumes of the man or anything else and I just said, well, let's skip it, and I am not interested, I can't use him." Asked on cross examination if he had a specific job in mind Higgins replied: "Yes, I had; at the time, I, the one specific job I had was to take over the accounting business that I had left, to build that up and to give it

better stature than the people that I had in there when I left." The business referred to was known as Meyers-Higgins Company, and was a one man operation. Higgins stated that he was not going to replace the one man but "what we had in mind, we could have built, with proper people, we could have gone forward and built considerably more to it." Higgins never employed anyone in this business on a salary basis. He did engage another person on a percentage basis, however. Higgins was asked if he would have offered appellant such a position on a percentage basis. He replied: "I would have offered it to him on a salary plus a percentage basis, which is not—I mean, it's very normal as public accounting practice." Higgins was then asked: "what would have been the offer you might have made Mr. Rotermund if you had made him one, by way of salary." He answered: "I really couldn't answer that question, because the only thing I saw was this, (apparently referring to the Service Letter) and then, after I saw that, why, that was it."

Higgins was not familiar with the Missouri Service Letter statute or it's requirements. His normal employment procedure was to request a resume and a letter of recommendation followed by a personal interview, spending at least a good day with a prospective employee. Higgins looked upon the service letter as a letter of recommendation and considered appellant's unsatisfactory for that purpose. Higgins testified he forwarded letters of recommendation to prospective employers, but that he also used such letters for his own purposes.

■ Section 290.140 RSMo.1969, mandates that every corporation doing business in this state, upon a proper request, shall issue to every employee who leaves the corporation after ninety days employment, a service letter signed by either the superintendent or manager of the corporation. This statutory service letter must detail the duties performed by the employee, his length of service, and truly state the cause of termination. If the employer fails to provide a service letter or provides a letter that is deficient in one or more respects a cause of action accrues in favor of the employee. Nominal damages are recoverable upon a showing that plaintiff's right to a letter was not complied with or that the letter was deficient under the requirements of the statute. If the evidence sustains a showing of either actual or legal malice punitive damages are recoverable. *Schmidt v. Central Hardware Company*, 516 S.W.2d 556 (Mo.App.1974); *Bubke v. Allied Building Credits, Inc.*, 380 S.W.2d 516, 519, 521 (Mo.App.1964); *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980 (Mo.App.1952).

■ Liability being established nominal damages were recoverable. We must determine whether substantial actual damages were proved. A recovery of such is predicated upon a showing that appellant was either refused employment, or as here, that he was hindered in securing employment by reason of his not having a service letter in compliance with the statutory requirements. *Schmidt v. Central Hardware Company*, supra; *Booth v. Quality Dairy Co.*, 393 S.W.2d 845, 848 (Mo.App.1965).

■ Commonly, actual damages are compensation for actual loss or injuries, *Chappell v. City of Springfield*, 423 S.W.2d 810, 814 (Mo.1968); *State v. Shain*, 341 Mo. 773, 108 S.W.2d 351, 356 (1937), and in statutory service letter cases damages must be susceptible of measurement. The pecuniary loss must be determinate and must be proved with reasonable certainty, rather than left to speculation. *Warner v. Southwestern Bell Telephone Co.*, 428 S.W.2d 596, 604 (Mo.1968); *Schmidt v. Central Hardware Company*, supra.

■ Respondent provided an inadequate service letter and appellant claims substantial loss. To meet his burden of proof he must complete the causal chain and establish a reasonable basis from which his actual loss may be calculated. He may not recover for mere expectancies or speculative injuries, but must prove determinable and measurable damages. Such damages are ascertainable in service letter cases by showing, (1) the approximate date when an employee was either refused employment or

hindered, i. e., his application was unacceptable because of an inadequate service letter or no such letter; and, (2) the salary rate of a job that in fact exists with the prospective employer who has turned him away. *Schmidt v. Central Hardware Company*, supra. Appellant has failed to make either showing. First, he fixes the time of refusal or hindrance, with no more specificity than "fall" of 1971. The damage differential for a period of this length could under circumstances of high earning power, such as we have here, encompass several thousands of dollars. If plaintiff in such circumstances were to elect the last day of fall as the point of refusal or hindrance no injustice could result, but to grant the jury a commission to pick and chose any day could very well result in an unwarranted award rather than a just recompense to appellant. We hold that to recover plaintiff must establish the date of injury with more certainty than he has done here or make the suggested election.

Secondly, we are compelled to conclude that appellant did not sustain his burden of establishing a "salary rate" or, for that matter, the existence of a definite job available to him. In reaching this conclusion we view the evidence in the light most favorable to appellant and give him the benefit of all reasonable inferences to be drawn therefrom disregarding respondent's favorable evidence. *Bubke v. Allied Building Credits, Inc.*, supra.

We have reviewed the deposition testimony of prospective employer Edward T. Higgins with the above rule in mind and have concluded that a job available to appellant had not really come into existence. No job was advertised. No formal application was made. No definitive description of services or duties was given. No hours were suggested. No definite salary was offered or included. The whole tenor of Higgins' testimony tends to support the conclusion that the Sullivan-Higgins conversation about appellant was at best exploratory. Higgins was contemplating a change in Meyers-Higgins Company—a change that he never made. As an alternative to potential employment with Meyers-Higgins, Higgins might, if he so chose, refer appellant to one of his "clients." But Higgins under these circumstances would be little more than a broker. The client would be the prospective employer with the ultimate decisional authority to hire or not and to set a salary.

It is not entirely clear from the evidence whether the testimony of a salary rate of "Maybe fifteen to twenty, twenty-five thousand" referred to client placements, though that appears to be the case, or whether it refers to employment by Higgins. Even if we were not left to speculate who was to be the prospective employer, the salary differential, like the time differential, was substantial and contingent on other factors. When pinned down on cross examination Higgins readily admitted he was not in a position to make an offer. The matter had not sufficiently ripened.

Careful analysis impels us to the conclusion that appellant is in much the same situation as Mrs. Schmidt in *Schmidt v. Central Hardware Company*, supra. Appellant, like her, was denied the opportunity of filing an application or pursuing a potential job opportunity beyond the initial contact. Under more propitious circumstances this opportunity might have resulted in further negotiations and ultimately ripened into an employment contract. We cannot say without engaging in speculation that further and seemingly necessary negotiations would have resulted in a job. There is little doubt that appellant suffered actual damages, but there simply is not sufficient evidence from which a jury could measure the actual loss, absent speculation, conjecture and guesswork.

■ There remains only the question of whether the trial judge properly cured the erroneous submission by amending the judgment and in effect allowing only the nominal damages. We believe he did. Appellant contends that the trial court was without authority to set aside the jury verdict. Appellant seems to fasten his argument on a theory that the trial court's action was an invasion of the province of the jury and an attempt by the trial court

to substitute its assessment of damages for that of the jury. It is clear that where a trial court does substitute its own assessment as to the amount of recovery the judgment so entered is without authority and void. *Jaeger v. Agnew*, 252 S.W.2d 847 (Mo.App.1952). It is also true that the authority of a jury to assess damages is statutorily decreed. § 510.270 RSMo.1969. However, the proposition that the measure of damages is solely within the province of the jury begs the initial question of whether, as a matter of law, the issue of damages may be presented to the jury at all. It is that question which must be first put. It is the trial judge's duty to make a determination of the sufficiency of proof as a matter of law, and, if in the performance of this judicial function he determines that the evidence is not sufficient, there is nothing for the jury to decide. *Insurance, Inc. v. Sanders*, 378 S.W.2d 249, 254 (Mo.App.1964). A verdict is the decision of the jury upon an issue or fact submitted to them, and if there be no issue of fact as to the amount, there is nothing, in that regard, for the jury to decide. *Home Trust v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1155 (banc 1936); *Schmidt v. Central Hardware Company*, supra.

As a further attack upon the actions of the trial judge appellant contends:

> "The amendment of the jury verdict by the trial court violated Rule 72.01 of the Missouri Supreme Court Rules."

This assignment of error is in violation of Rule 84.04(d) as an abstract declaration of law. *Bonds v. City of Webster Groves*, 432 S.W.2d 777, 783 (Mo.App.1968). Simply stating errors without also specifying why they are errors neither complies with Rule 84.04 nor preserves anything for review. *State ex rel. State Highway Commission v. Heim*, 483 S.W.2d 410, 415 (Mo.App.1972).

Notwithstanding the insufficiency of the assignment we find nothing in Rule 72.01 which would preclude the rectifying action of the trial judge.

Appellant states that by amending the judgment to one dollar the trial court, in effect, granted respondent's motion for a directed verdict on the issue of damages which had previously been denied. Appellant urges that in so doing the court has contradicted itself. We conclude the court merely corrected itself. Such action is consonant with sound post trial practice, the primary purpose of which is to apprise the trial court of its errors thus giving it the first opportunity to correct any deficiencies. The trial judge here properly anticipated our concurrence.

Judgment affirmed.

KELLY, P. J., and GUNN, J., concur.