Wayne DOORES, Respondent-Plaintiff,

v.

INTERCONTINENTAL ENGINEERING–
MANUFACTURING CORPORATION,
Appellant-Defendant.

No. WD 34534.

Missouri Court of Appeals,
Western District.

March 20, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 1, 1984.

Application to Transfer Denied
June 19, 1984.

Stanley E. Craven, William C. Martucci, Spencer, Fane, Britt & Browne, Kansas City, for appellant-defendant.

P. Wayne Kuhlman, John B. Reddoch, Liberty, for respondent-plaintiff.

Before SOMERVILLE, P.J., TURNAGE, C.J., and CLARK, J.

TURNAGE, Chief Judge.

Wayne Doores filed suit against his former employer, Intercontinental Engineering-Manufacturing Corp., for unpaid wages and penalty pursuant to § 290.110, RSMo 1978. The court entered judgment for $10.20 in unpaid wages, $272.00 for vacation time which Doores had accrued, and $3,288.00 as penalty.

Intercontinental contends that the amount awarded for vacation time is not unpaid wages within the meaning of § 290.-110, that there was no evidence to support a finding that Doores worked an hour and a half on the day of termination, and that even if Doores were entitled to some amount of unpaid wages on the date of termination there should be a good faith or de minimis exception applied. Affirmed in part and reversed in part.

This case was tried to the court without a jury. Doores testified that he was employed by Intercontinental as a painter at an hourly wage of $6.80. Doores worked on Monday, March 8, 1982, but called in sick on Tuesday, March 9, 1982. He testified that he was not sick but was pursuing another job opportunity. On Wednesday, March 10 Doores again called in sick, but said that if he felt better he would be in later. Actually, he was again pursuing another job.

Doores testified that he arrived for work on Wednesday the 10th at about 10:30 a.m. On arrival he punched in on the time clock, as was his custom, and went to the office of his supervisor Doy Chaney. Chaney told Doores to go to the parking lot and assist in loading a bulldozer on a truck.

Doores said that the actual assistance that he lent to the loading of the bulldozer took 15–20 seconds. While Doores and other employees engaged in loading the bulldozer were still standing in the parking lot, Chaney came out and said that his supervisor, Dave Lyons, had sent Chaney to ask Doores if Doores had been absent because he was looking for another job. Doores said that Chaney told him he should say that he had not been looking for another job because Chaney was under instructions to fire him if that were the case and did not want to do so. Doores told Chaney that he would not lie about the matter and that he in fact had been off looking for another job. After this conversation between Doores and Chaney, Chaney went back inside the building and later came out and told Doores that he would have to terminate him. Doores said the termination conversation occurred while he and Chaney

took a walk which lasted about one-half hour.

Chaney took Doores inside and prepared the normal paper work for a terminated employee. When this was completed and Doores was ready to leave he picked up his timecard from Chaney's desk in order to time out. However, Chaney took the time-card and said that because of the termination he would have to take care of it.

Doores testified that he was at Intercontinental for an hour and a half on the 10th. Testimony from another employee of Intercontinental was that Doores was at the plant for about an hour and a half on the 10th. Dave Lyons testified that he saw Doores arrive at 10:30 or 11:00 a.m., and the plant manager, Brian Everist, testified that he saw Doores signing termination papers about noon on the 10th.

On March 12, Doores hand delivered a letter to Intercontinental requesting all monies due him, including his vacation pay. Intercontinental paid Doores for the time he had worked on March 8 but refused to pay him for any time on March 10 or for vacation pay.

■ Intercontinental first contends the court erred in entering judgment for $272.00 for vacation pay because vacation pay is not "wages" within the meaning of § 290.110. That section requires that an employer pay an employee who has been terminated, with or without cause, unpaid wages at the contract rate within 7 days after written request of the employee, or pay a penalty of a maximum of 60 days wages plus the unpaid wages. In this contention Intercontinental is correct. In *Monterosso v. St. Louis Globe-Democrat Publishing Company*, 368 S.W.2d 481, 489 (Mo.1963), the court held:

> [T]hat "wages * * earned at the contract rate" under § 290.110 refer to the basic rate of pay, *People v. Vetri*, 309 N.Y. 401, 131 N.E.2d 568, 571, i.e., wage payments due and payable at regular intervals, *Conlon-Moore Corporation v. Johnston*, 23 Ill.2d 341, 178 N.E.2d 336, and have no reference to vacation credits calculated on the basis of priority, number of days worked during the preceding calendar year, and payable only once and in one sum.

Doores contends that *Monterosso* does not apply because the court there was considering a collective bargaining agreement which provided for vacation pay. However, in the statement quoted above the court was considering unpaid wages as used in § 290.110 and was not construing vacation pay under the collective bargaining agreement. Doores' claim for vacation pay is based on the number of days he worked during the preceding year. The court clearly held in *Monterosso* that vacation pay is not "wages" within the meaning of that term as used in § 290.110. Thus, the court erred in awarding $272.00 in vacation pay as unpaid wages on Doores' claim for that pay under § 290.110.

■ Intercontinental next contends that there was no substantial evidence that Doores worked one hour and a half on March 10. The court awarded Doores $10.20 in unpaid wages which obviously computes to an hour and a half at the rate of $6.80 per hour. As stated above, Doores testified that he was at the plant for an hour and a half on March 10 and this testimony was corroborated by a fellow employee. In addition, Chaney's supervisor, Lyons, testified that he saw Doores arrive at 10:30 or 11:00 a.m. and the plant manager, Everist, saw Doores signing his termination papers about noon. There was no evidence that Doores was not at the plant for an hour and a half. Certainly the above constituted substantial evidence that Doores was at the plant for an hour and a half on March 10. Further, Lyons agreed that when Doores timed in on March 10 he became an employee. There is no contention that Doores was not subject to the control of his supervisor during the time he was at the plant, nor is there any contention that Doores spent unauthorized time on the 10th. While Intercontinental stresses the fact that Doores spent only 15–20 seconds assisting in loading the bulldozer, it ignores all the other evidence that Doores was at the plant for an hour and a

half and was subject to the control of his supervisor during that entire time.

■ Finally, Intercontinental contends that the penalty of $3,288.00 was unauthorized even if Doores were entitled to $10.20 in unpaid wages for March 10. Intercontinental argues that the penalty should not be applied because the company failed to pay that sum in a good faith belief that no wages were due for the 10th, and because the 15–20 seconds of work on the 10th was de minimis and insufficient to impose a penalty. The problem with Intercontinental's first reason for its failure to pay the $10.20 in wages for the 10th is a complete lack of evidence to support a good faith belief that no wages were due. No Intercontinental employee who testified claimed to have entertained a good faith belief that the company did not owe Doores any wages for the 10th. Both Lyons and Everist testified that they saw Doores at the plant on that day. Doores testified that he timed in and this was not disputed. Doores said he left the timecard with Chaney, and Doores testified that he later was told by Chaney that Chaney had given the timecard to Lyons and he believed that Lyons had torn it up. In any event the timecard was not produced at trial. Chaney did not testify at trial because he was working out of the country.

In short, while there was substantial evidence to support the court's finding that Doores was due $10.20 for unpaid wages on the 10th, there was no evidence to demonstrate belief on the part of Intercontinental that it did not owe Doores any wages for that day. The only inference to be drawn from the evidence is that Doores was not paid for the 10th because his timecard was lost or destroyed, not because Intercontinental in good faith believed it did not owe him wages.

■ Intercontinental's second reason for failing to pay wages for the 10th was that Doores worked only 15–20 seconds, and this is such a trifling amount of time that it is de minimis. As pointed out above, the undisputed evidence is that Doores was at the plant for an hour and a half subject to the control of his supervisor for that entire period. There is no contention that Doores remained longer than was requested by the supervisor. Doores stated that he normally worked a ten hour day, and an hour and a half is 15% of that work day. It cannot be said that 15% of a work day falls under the de minimis rule. In *Wiley v. Stewart Sand & Material Co.*, 240 Mo.App. 392, 206 S.W.2d 362, 367[7] (1947), this court quoted from *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), to the effect that an employee is entitled to working time when he is requested to give up a substantial measure of his time and effort. It cannot be said that 15% of the normal working day for Doores did not constitute a substantial amount of time. In any event, Intercontinental was wrong to base its de minimis claim on the argument that only 15–20 seconds were involved; as pointed out, the issue involves one hour and a half of unpaid wages.

■ The judgment awarding Doores $10.20 in unpaid wages and the penalty under § 290.110 is affirmed.[1] The court awarded $3,288.00 as a penalty, however the maximum allowed is 60 days wages at the contract rate. The court miscalculated this amount because 60 days wages at $6.80 per hour computes to be $3,264.00. The judgment for penalty is modified to award $3,264.00 to Doores. As modified, the judgment is affirmed. The judgment for $272.00 in vacation pay is reversed.

All concur.

1. The statute provides that the unpaid wages become due and payable on the day of discharge or refusal to employ longer. If the wages due are not paid within seven days of written notice the statute provides that "as a penalty for such nonpayment the wages of the servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid; provided, such wages shall not continue more than sixty days." Thus, the court had no discretion as to awarding the penalty but was required to do so when it found Doores was due unpaid wages. Nor does the statute require any minimum amount of unpaid wages to trigger the penalty. If the court finds any unpaid wages which are not paid within seven days, it must award the penalty in addition to the wages.