Joyce L. **BALL**, Respondent,

v.

**AMERICAN GREETINGS CORPORATION,**
**Appellant.**

No. WD 38058.

Missouri Court of Appeals,
Western District.

April 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied
July 26, 1988.

Sullivan & Williams, Thomas B. Sullivan, III, and A. Morgan Hickenlooper, Kansas City, for appellant.

Paden, Welch, Martin, Albano & Graeff, Michael W. Manners, Independence, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

SHANGLER, Presiding Judge.

The plaintiff Joyce Ball brought an action in three counts against her recent employer, defendant American Greetings Corporation. Count I alleged that defendant failed to issue a service letter to the plaintiff within a reasonable time in breach of § 290.140, RSMo 1978, and sought actual and punitive damages. Count II alleged that the defendant issued the plaintiff an improper service letter in breach of § 290.140, RSMo 1978, and sought actual and punitive damages. Count III alleged that the defendant withheld wages due the plaintiff for more than seven days after termination in breach of § 290.110, RSMo 1978, and sought actual damages and statutory penalties. The plaintiff submitted on Count II and Count III. The jury returned a verdict on Count II for $1 as actual damages and for $105,000 as punitive damages, and for $369.36 on Count III. The motion for new trial or alternatively for judgment notwithstanding the verdict was overruled, and the defendant American Greeting Corporation appeals.

The suit was filed by the plaintiff in October of 1981. The service letter statute then in effect was, as the petition pleaded, § 290.140, RSMo 1978. The verdict on the service letter count was returned and judgment entered in October of 1985. In that interim, on August 13, 1982, § 290.140, RSMo 1978, was amended to provide that the violation of the statute rendered the corporate employer

> liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; *but no award of punitive damages under this section shall be based upon the content of any such letter.* [emphasis added]

In the course of pretrial proceedings, the defendant moved for partial summary judgment on the ground that the amendment was remedial and therefore retrospective to the pending action to preclude punitive damages based upon the content of the service letter. The motion contended that since Count II of the petition pleaded that the defendant employer issued a service letter to the plaintiff, punitive damages were precluded as a matter of law by the amendment. The court denied partial summary judgment.[1] *After* the entry of judgment and while the cause pended on appeal, the supreme court en banc in *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656 (Mo. banc 1986) decided that the punitive damages component of the 1982 amendment to service letter § 290.140 was remedial and so of retrospective effect to a pending action not yet reified as a judgment. The contention that punitive damages were not recoverable under the cause was not retrospective to an action filed before its effective date to affirm an award for punitive damages based upon the content of the service letter. *Vaughan* was taken by the supreme court en banc on transfer and expressly overruled *Deering*. We delineate this history to give perspective to the positions of the litigants, especially as to the theory of the cause of action as submitted under § 290.140.

---

1. The order to deny partial summary judgment entered by the trial court was compatible with the construction later given the amendment by the court of appeals in *State ex rel. Deering v. Corcoran*, 652 S.W.2d 228 (Mo.App.1983). *Deering* was the authoritative interpretation of that statute, and remained so throughout the prejudgment career of that suit. We adopted the *Deering* rationale in *Vaughan v. Taft Broadcasting Company* [WD 35724] that the 1982 amend-

of action as pleaded by plaintiff Ball as a matter of law, and hence were not submissible, was reasserted by the defendant American Greetings Corporation in the posttrial motion for judgment notwithstanding the verdict. It is a contention on appeal we confront and decide in the course of opinion.

The defendant American Greetings Corporation, with headquarters in Cleveland, Ohio, manufactures greeting cards and other such items. It sells them through non-owned retail outlets and employs part-time personnel for that purpose. The plaintiff Joyce Ball was employed as such a part-time merchandiser in February of 1972 and worked in the Skaggs Drug Store in Sedalia throughout her stint of employment with American Greetings Corporation. It was her responsibility to maintain the inventory of the American Greetings products at the store and to keep the display area in order. Ball was paid by the hour and by April of 1980 averaged about 12 hours per week. She also spent time to aid her customers, often elderly, to purchase other items at Skaggs, unrelated to her work. Ball submitted a time sheet to the home office in Cleveland in order to be paid the earned wages.

Her supervisor during the last year of employment was James Benson, a sales representative for American Greetings Corporation. On April 21, 1980, Benson telephoned Ball at home and informed her: "I have bad news for you. We're having a cutback, and it's coming from the general office, and you're one of them we're going to have to let go." Benson expressed regret for the short notice, but told Ball that she could work four hours and turn in a time sheet which indicated 24 hours of work—the extra hours to serve as severance pay. Ball worked her last four hours on April 22, 1980. She soon learned that instead of for reasons of reduction of force, she had been replaced for a new employee, Barbara Young.

Ball then submitted her final time sheet to the employer. It indicated that she worked four hours on April 22, her last day

of employment. She also inscribed on the form:

Payment in lieu of notice of termination by Jim Benson on April 21 for reasons not made clear to me. Request that reasons be furnished me in writing in order to determine my future actions.

The form also, conformably to the advisement of Jim Benson, noted that 24 hours pay [the equivalent of two weeks work] was due. Ball sought the reasons for her discharge because she expected that she would have to tell a prospective employer the reasons. That expectation was engendered by the application for employment form she completed for American Greetings Corporation which required that she list the previous employers and the reason she left the last employment.

The time sheet with notation was received at the Cleveland office and engaged the attention of the employer because of the inscribed note. Pribula, Supervisor of Merchandiser Administration, responded by letter to Ball within the week [on May 13, 1980]:

Your note expressing your concern over your recent termination has been forwarded to our district manager in your area for his investigation.

Please be assured that upon completion, you will be made aware of all findings.

On that same day Pribula also dispatched a memorandum to Gnefkow, manager of the merchandiser territory which encompassed Sedalia, with directions to investigate the Ball request for additional information concerning her termination and the payment in lieu of notice of termination, as well. A copy of the memorandum issued also to Regional Manager Stonestreet, Exman— Pribula's superior—and another copy was delivered to his supervisor, Brown. Pribula explained:

At that point I contacted my supervisor and took the letter over to him, and you know, discussed it with him because it's not our policy not to just—it wasn't our policy to blindly pay twenty-four hours or any amount of hours without a reason, and took it over for his attention for review.

The matter nevertheless—as Pribula put it—was simply "lost in the shuffle."

Ball heard nothing more from American Greetings Corporation for the next five months. In that interim her husband learned of the service letter law [§ 290.140, RSMo 1978] and the requirement of that statute that an employer furnish reasons for discharge to the employee upon request. Thus, on October 17, 1980, the husband composed a letter to Pribula as Merchandiser Administrator for the defendant addressed to the corporate headquarters in Cleveland. The letter was signed by Ball. It referred to the Pribula response of May 13, 1980 to her request for reasons for her discharge by Jim Benson. The letter made claim for severance pay and also advised Pribula:

> [T]he matter of a letter of dismissal, commonly referred to as a Service letter, is covered by Section 290.140, which provides that a letter meeting certain requirements, among them that the reason for discharge be truly stated, be furnished upon the written request of the former employee. Failure to do so can result in the superintendent or manager being deemed guilty of a misdemeanor and presents grounds for civil action seeking actual and punitive monetary damages....

Pribula received the letter, realized that the matter had not yet been resolved, and took the Ball letter to his supervisor, Brown. They—Pribula and Brown—both regarded the October 17, 1980 letter from Ball as a renewed demand for severance pay. They prepared to investigate, since severance pay was contrary to company policy. Brown telephoned Ball in November of 1980, and some time thereafter she received a letter from Brown with a check for wages for twenty-four hours—the amount for severance promised by Benson. The letter said nothing about why Ball was terminated.

Ball still had no response to the request for a service letter, so on September 3, 1981, she wrote Pribula yet another request. Pribula transmitted the letter to Melvin, Corporate Director for Employee Relations, who drafted and sent this response to Ball:

> Dear Joyce [Ball]:
> Your letter of September 3, 1981 was referred to my attention for answering. We retain only the names, addresses, and employment dates of part-time employees after they have been separated from our employ for a period of one year. In your particular case the record indicates you were in our employ as a Part Time Merchandiser from February 24, 1972 thru April 25, 1980.
> Briefly the Part Time Merchandiser job duties consist of contacting the Store Manager prior to straightening the merchandise in the dealer's card displays; sorting and removing damaged and soiled merchandise; putting away orders; dusting and cleaning cabinets and merchandise.
> In addition, the Part Time Merchandiser is responsible for following an assigned work schedule as well as for correctly completing assigned paperwork on them. If further details are required please advise.
> Sincerely,
> /s/ Richard E. Melvin
> Corporate Director
> Employee Relations

The letter mentioned nothing about why Ball was terminated.

There was evidence that the content of the letter from Corporate Director of Employee Relations Melvin—"[w]e retain only names, addresses, and employment dates of part-time employees"—was untrue. Melvin conceded that the employer kept such records: "We know on all employees why they left the company." In fact, two company records in evidence—one of them subscribed by Benson—cited as the reason for discharge: "Not doing the job." Melvin testified that had Ball asked him for the reason for her discharge after she received the letter of September 10, 1981, he would not have told her because of company policy to furnish only a "neutral reference."

The plaintiff submitted her recovery under service letter § 290.140, RSMo 1978 [the statute in effect at the time the peti-

tion was brought] upon the pleaded theory of Count II that the employer willfully failed to state the true reason for her discharge. The jury returned a verdict for plaintiff on Count II for $1 as actual damages and $105,000 as punitive damages. The court entered judgment accordingly and refused the posttrial motion of the defendant for judgment in accordance with the motion for directed verdict at the close of all the evidence.

American Greetings Corporation contends that the adjudication of Count II was governed by the 1982 amendment to service letter § 290.140 then in effect and not by § 290.140, RSMo 1978 in effect at the time the petition was filed—and hence the issue of punitive damages was not submissible and the defendant is entitled to judgment. Indeed, as we note, our supreme court en banc decided that punitive damages are remedial so that the amendment to § 290.140 which added a prohibition against such an award was retrospective to causes pending prior to entry of judgment. *Vaughan v. Taft Broadcasting Company*, 708 S.W.2d at 660[2, 3]. That amendment reserves a cause of action against the employer for punitive damages for failure of an employer to issue a service letter, but precludes an award for punitive damages based upon the content of any such letter. A cause of action which asserts a claim under the service letter statute that the employer did not state the true reason for discharge is based upon the content of the service letter, and hence will not sustain an award for punitive damages under the 1982 amendment. *Id.*[1].

■ Count II of the petition was submitted by the packet numbered 7 through 11. These instructions describe the claim of Joyce Ball, variously, as the failure of American Greetings Corporation "to state the reason for her discharge," or "the true cause of Plaintiff's termination." It was a cause of action not yet rendered into judgment at the enactment of the 1982 amendment. It was a cause of action and submission based upon the content of the service letter, and hence precluded from an award of punitive damages by the retrospective

effect of the 1982 amendment to § 290.140. Return of verdict for punitive damages, accordingly, was contrary to law and must be set aside.

The motion for judgment notwithstanding the verdict asserted by American Greetings Corporation expressly raises the issue that the 1982 amendment to § 290.140 foreclosed punitive damages based upon the content of a service letter, and hence Ball failed to prove a submissible case. Ball contends, notwithstanding the sufficiency of the motion for judgment notwithstanding the verdict to raise the issue, neither the motion for directed verdict at the close of the plaintiff's evidence nor at the close of all the evidence raised the issue, and hence the contention is not preserved for review.

■ The motion for directed verdict notwithstanding the verdict is akin to that of a motion for directed verdict at the close of the evidence and presents the same issue: whether the plaintiff made a submissible case. *Wells v. Orthwein*, 670 S.W.2d 529, 532[1, 2] (Mo.App.1984). The neglect to move for a directed verdict at the close of all the evidence waives any contention that the plaintiff failed to prove a submissible case or that the court erred in the denial of the motion for judgment notwithstanding the verdict. *Grothaus v. Brown*, 690 S.W. 2d 431, 432[1] (Mo.App.1985); *Grindstaff v. Tygett*, 655 S.W.2d 70, 75[10–12] (Mo. App.1983). The rules of practice enjoin, moreover, that to engage appellate review on a motion for judgment notwithstanding the verdict, the motion for directed verdict state the specific grounds relied on for that relief. Rule 72.01(a); *Christ v. Tice*, 578 S.W.2d 319, 322[3] (Mo.App.1979). The motions for directed verdict at the close of the plaintiff's case and at the close of all the evidence, although replete with assertions as to the insufficiency of the proof for submission under § 290.140, do not assert the effect of the 1982 amendment as a retrospective bar to an award for punitive damages on that cause of action based on the content of the service letter.

■ To refuse review altogether, however, would be to slight the rule of decision

by our supreme court en banc in *Vaughan v. Taft* and the public policy the 1982 amendment declares. It would be to allow a judgment for punitive damages based upon the content of a service letter to stand in the face of a peremptory prohibition of statute, and hence to suffer a plain error to go uncorrected. It would be to tolerate the manifest injustice of an illicit [albeit adventitious] boon of damages, and to forebear a miscarriage of justice. Rule 84.13(c). It is a plain error, moreover, not manifest to the trial court until *after* decision on the post-trial motions, and hence opportunity for correction of the verdict and judgment for punitive damages. Rule 78.08. We review for plain error for the reasons given, and set aside the judgment entered for the plaintiff Ball on service letter § 290.140.

■ To accomplish full justice, however, we do not order the entry of judgment for the defendant American Greetings Corporation on the cause of action, but a remand for a new trial. It was only the enactment of the 1982 amendment—and the declaration of retrospectivity by our supreme court en banc after verdict and while the cause pended on appeal—which invalidated the proof of punitive damages as to the action based upon the content of § 290.140. The cause of action pleaded by Count II, submitted to the jury, and returned as a verdict was otherwise fully proven. The cause of action as pleaded, proven and submitted, moreover, was valid according to the rule of decision then extant—*State ex rel. Deering v. Corcoran*, 652 S.W.2d 228 (Mo.App.1983). That rule of law denied retrospective application to the 1982 amendment as to causes already pending. It was by the force of that pronouncement that the court discountenanced the affirmative defense, motion for partial summary judgment and other objections by American Greetings Corporation that the 1982 amendment precluded a cause of action for punitive damages based upon the content of a service letter. That is to say, it was not the insufficiency of proof of the cause of action as then defined which invalidated the judgment, but the operation of the law.

In those circumstances, the interest of justice and principles of fairness demand that the litigant, so unwittingly deprived of a judgment, be enabled to amend the petition to prove a recovery on another theory the evidence favors. *Zimmerman v. Associates Discount Corporation*, 444 S.W.2d 396, 398[3] (Mo. banc 1969).

The trial evidence favored a submission on both Count I—failure to issue a service letter—and on Count II—the issuance of an improper service letter—under § 290.140. The plaintiff chose to submit Count II, and hence Count I was deleted from the petition and from the case for all purposes. *Page v. Hamilton*, 329 S.W.2d 758, 762[5, 6] (Mo.1959). Count I pleaded a cause of action for failure to issue a service letter upon request, a lapse which subjected the employer to liability for actual and punitive damages under § 290.140, as it does under the 1982 amendment. The evidence was abundant that, although employer American Greetings Corporation was made aware of the explicit obligation § 290.140 imposed upon an employer to issue a service letter to a discharged employee upon request, the employer refused to issue the statement in the form mandated by statute because it was the policy of the company to furnish only a "neutral reference"—a letter uncolored by any reason for discharge.

The statute [§ 290.140 as well as the amendment] defines a service letter in terms of the obligation it imposes: a statement from the employer which sets forth (1) the nature and character of service rendered by the employee to the corporation (2) the duration of the employment service (3) the true cause, if any, the employee was discharged or voluntarily left service, (4) and signed by the superintendent or manager. The purpose of § 290.140 is to protect the right to labor. *Cheek v. Prudential Insurance Co. of America*, 192 S.W. 387, 393[8–10] (Mo.1916). It was enacted to regulate the business custom not to employ an applicant for a position until the cause for leaving the service of the former employer was known.[2] *Id.* at 389. To that end, the statute contemplates a letter of

---

**2.** It is a business custom the defendant American Greetings Corporation practices.

clearance defined in terms of the four components: a signed statement from the employer as to the nature and character of the employee service, its duration, and the cause for termination of that service. A letter which refuses to state the cause for the termination of service not only truncates the purpose of the statute, but also refuses to issue "the requested letter" the statute defines, and hence courts liability for nominal and punitive damages. *See* § 290.140 *and* the amendment of 1982; *Walker v. St. Joseph Belt Railway Co.,* 102 S.W.2d 718, 724 (Mo.App.1937).

Our conclusion runs from an evident purpose of the 1982 amendment: to dispel the quandary as to liability for punitive damages which confronted an employer who sought in good faith to comply with the requirement that the service letter "truly stat[e] for what cause" the employee was discharged. If the service letter attempted a true statement of cause, it was nevertheless open to dispute whether the reason ascribed "truly stated the cause," and the employer courted liability for punitive damages. *Potter v. Milbank Manufacturing Company,* 489 S.W.2d 197, 205[6] (Mo. 1972). If the service letter did not issue, or issued without any statement of the cause for discharge, the judicial decisions deemed that the employer failed to respond to the request for service letter and was, again, exposed to liability for punitive damages. *Ackerman v. Thompson,* 356 Mo. 558, 202 S.W.2d 795, 799[9, 10] (1947).

It is for that reason that the 1982 amendment adds in subsection 2: "[N]o award for punitive damages under this section shall be based upon the content of any such letter." That is to say, if the service letter informs the employee of the cause of discharge, the reason ascribed may be mistaken, but will sustain only compensatory and not punitive damages. The 1982 amendment in subsection 2 nevertheless continues to allow punitive damages "in the event that the evidence establishes that the employer did not issue the requested letter." The 1982 amendment continues in effect as subsection 1 the then extant § 290.140 virtually intact—and thereby incorporates the settled judicial construction of the language reenacted. *Snow v. Hicks Bros. Chevrolet, Inc.,* 480 S.W.2d 97, 103[10, 11] (Mo.App.1972). Those decisions deem that the failure to state the cause for discharge [or any other component of the letter as defined by § 290.140] constitutes refusal to issue the requested letter. *Walker v. St. Joseph Belt Railway Co.,* 102 S.W.2d at 724[4–7].[3]

The failure of proof as to Count II was not from want of evidence, nor even because the theory of recovery was misconceived, but from the intervention of the law which abolished the preponderant punitive damages incident of the cause of action. Thus, the choice to forgo submission of Count I—although equally proven—was from the necessity of election and not from undue purpose. In the interests of justice, therefore, the cause of action of § 290.140, as amended, is remanded to the trial court for further proceedings with direction to allow plaintiff opportunity to amend the petition to replead Count I as a cause of action under the 1982 amendment. *Zimmerman v. Associates Discount Corp.,* 444 S.W.2d at 398[3]. *Fairbanks v. Chambers,* 665 S.W.2d 33, 40[11] (Mo.App.1984).

## II

American Greetings Corporation argues next that the issue of punitive damages was not submissible as to Count II nor, we assume on the eventual retrial, as to a cause of action for refusal to issue a requested service letter under the 1982 amendment. We reverse the judgment on Count II because punitive damages are no

---

**3.** Our decision falls within the emphasized component of the statutory rationale *Kincaid v. Pitney Bowes, Inc.* 750 S.W.2d 550 [Mo.App.1988 adopted concurrently] discerns for § 290.140, as amended August 13, 1982 [slip opinion at 6]: "The statute does not give any guide as to what would constitute a violation of section 1, but it can be *safely* said that a letter which fully sets out the three requirements, nature and character of service, duration, and cause of discharge, would comply. On the other hand, *a letter that did not set out the three requirements or any one of them would be a failure to issue the requested letter....*" [emphasis added].

longer allowable for the content of a service letter, hence the contention as to the judgment entered on the verdict of the jury on Count II is moot. Count I was neither submitted nor adjudicated, and hence the sufficiency of proof of that pleading is not for review. We determine only that the plaintiff has shown a state of facts which might entitle her to recover, and so in the interests of justice we remand to allow an amendment of the petition to put the theory the evidence favors in issue for adjudication. *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d at 398.

■ To aid an eventual retrial, nevertheless, we restate the precepts which govern the submission of punitive damages for failure to furnish an uncurtailed service letter as defined in the 1982 amendment to § 290.140. The test to determine the proof of malice in such a cause of action [*Stark v. American Bakeries Co.*, 647 S.W.2d 119, 123[6, 7] (Mo. banc 1983)] is:

> whether the defendant did a wrongful act intentionally without just cause or excuse. [Citations omitted]. To be assessed punitive damages, defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it.

The standard pronounced is malice in law. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 808[4, 5] (Mo. banc 1984); *Hall v. St. Louis–San Francisco Railway*, 224 Mo.App. 431, 438–439, 28 S.W.2d 687, 691[9–11] (1930). It is an imputation of a state of mind—malice—" 'from the *mere* intentional doing of a wrongful act to the injury of another without legal justification or excuse.' " *Sanders v. Daniel International Corp.*, 682 S.W.2d at 808 (*quoting Freezer v. Miller*, 163 Va. 180, 176 S.E. 159, 168 (1934)).

MAI 16.01 defines malice in law [4] in those very terms:

> The term "malice" ... means the doing of a wrongful act intentionally without just cause or excuse.

American Greetings Corporation argues that *Stark* [and the other decisions which treat the proof of punitive damages in service letter cases] requires knowledge by the defendant that the act was wrongful when done—and hence an actual wrongful state of mind akin to the *malo animo* of legal malice *Sanders* describes. That degree of malice, American Greetings Corporation argues further, requires proof of an actual intent to do harm—a state of mind the definition of MAI 16.01 does not render.

The definition of *malice* MAI 16.01 and *Stark* render are equivalent in meaning as well as in terms. The quiddity of malice in law is—as both MAI 16.01 and *Stark* define—"the doing of a wrongful act intentionally without just cause or excuse." It bases liability on the wrongfulness of the act which produces the harm, and not on an actual intent to cause the harm. In that sense, *malice in law* imputes a state of mind to do harm from the nature of the act, and not from any purpose to cause harm. *Sanders* 682 S.W.2d at 808[4, 5] and 813[6, 7]. The attentuation in *Stark* [and the other decisions] of that simple definition: "the doing of a wrongful act intentionally without just cause or excuse" into: "the defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it"— does not describe a degree of malice other than *malice in law* nor impose the more onerous proof of an actual purpose to do harm, as American Greetings Corporation argues. The two phrases as the decisions render them are not only apposites, but equivalents. A wrongful act intentionally done without just cause or excuse means that the actor lacked "the honest belief that [the] act was lawful" when done. *Hall v. St. Louis–San Francisco Railway Co.*, 224 Mo.App. at 439, 28 S.W.2d at 691[11]; *Booth v. Quality Dairy Co.*, 393 S.W.2d 845, 851 (Mo.App.1965). An act intentionally done without the honest belief that it was lawful when done, as a self-evident proposition, is an act known to the

---

4. The rubric of MAI 16.01 *Definition—Legal Malice* is a misnomer according to the classification of that multiform state of mind delineated in *Sanders*.

actor to be wrongful. Thus, the phrase in *Stark*, "but must have known it was wrongful when he did it" does not extend the definition of *malice in law* but is only redundant of the antecedent phrase, "defendant must not only have intended to perform the act which is ascertained to be wrongful"—a paraphrase of the historic definition of *malice in law* our decisions have declared since *Goetz v. Ambs*, 27 Mo. 28, 33 (1858).

That sense of definition is aptly articulated in the early case, *McNamara v. St. Louis Transit Co.*, 182 Mo. 676, 682, 81 S.W. 880, 881 (1904):

> The instruction given, following *Goetz v. Ambs*, supra, states that malice 'means the intentional doing of a wrongful act without just cause or excuse.' *This means* that he not only intended to do the act which is ascertained to be wrongful, but *that defendant knew it was wrongful when he did it.* [emphasis added]

It is evident that the grammatical structure *Stark* employs in paraphrase introduces no new definition of *malice in law*, but conveys the sense of *McNamara* that a wrongful act intentionally done without the honest belief that it was lawful when done is an act known to the actor to be wrongful. *Hall v. St. Louis–San Francisco Railway Co.*, 24 Mo.App. at 439, 28 S.W.2d at 691[11]; *Booth v. Quality Dairy Company*, 393 S.W.2d at 851. Thus, the definition *Stark* renders of *malice* by either phrase, or in composite, is in terms of a wrongful act intended and hence known to be wrong—and liability for the injury follows from the intent to do the wrongful act, and not from an intent to injure. That is to say, again, liability derives from an imputed state of mind—*malice in law* —and not from an *animo malo*.

MAI 16.01 renders the definition of *malice in law* under our law as presently evolved. On the eventual retrial and submission of a cause of action as repleaded under § 290.140, as amended, for refusal of the employer to issue the requested service letter the statute defines, the issue of punitive damages is properly submissible in terms of the MAI 16.01 definition of *malice*.

## III

American Greetings Corporation argues also that the court erred by the denial of the motion for a directed verdict on Count III, the claim for withheld wages and penalty under § 290.110, RSMo 1978. That statute provides that if earned wages of a terminated employee are not paid within seven days of written request thereafter, then—as a penalty—the wages shall continue from the date of discharge until paid, but not for more than sixty days. *Doores v. Intercontinental Engineering–Manufacturing Corp.*, 670 S.W.2d 65, 68 (Mo. App.1984). The jury awarded employee Ball $13.68 for wages due and $355.68 as penalty.

■ The employer argues that the very evidence of the employee conclusively shows that she was terminated on April 21, and not on April 22—for which the demand for wages was made. This evidence, the employer argues, is apparent from the time sheet and letter sent by the employee to the employer. A direction of verdict cannot issue unless reasonable minds, the evidence considered in the light most favorable to the plaintiff, could only find in favor of the defendant. *Missouri Farmers' Association, Inc. v. Barry*, 710 S.W.2d 923, 925 (Mo.App.1986). It was the evidence of the plaintiff employee that Benson indeed notified Ball of her termination on April 21, but that "she could work or not work ... [f]our hours and turn in for two weeks"—that is, that she was not discharged until that four hours of work was completed. Ball went to the store on the next regular workday, April 22, and worked four hours. She later submitted her time sheet for those four hours as well as for the two weeks wages promised as severance pay by Benson. A letter from Pribula acknowledged receipt of the time sheet as inscribed, but Ball received no pay for earnings for either the four hours of labor or for the severance pay. Contrary to the contention of American Greetings Corporation that the evidence showed con-

clusively that Ball was terminated on April 21, the jury could have found that Ball was told she was about to be terminated, but could work four more hours—and that she did the next day, on April 22. There was evidence from records of the employer, moreover, that Ball was employed "thru April 25, 1980"—however that was derived.

■ The cause of action under Count III was submitted by Instruction No. 13:

Your verdict must be for Plaintiff if you believe:

First, Plaintiff worked four hours on April 22, 1980, and

Second, Plaintiff requested in writing that Defendant pay her for such work, and

Third, Defendant did not pay Plaintiff for such work within seven days after she made such request.

American Greetings Corporation complains that the submission does not require a finding that Ball earned the wages requested prior to termination. Whatever prejudice to the defendant may have inhered in that lapse in instruction was dispelled by converse Instruction No. 14, given at the instance of the defendant:

Your verdict must be for the defendant, American Greetings Corporation, if you believe that Plaintiff, upon her termination, made demand for payment of money which was not wages actually earned to the time of her termination.

Instructions No. 13 and 14 read together comprised a correct submission of the cause of action under § 290.110. *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237, 245 (Mo. banc 1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed. 2d 822 (1984).

■ American Greetings Corporation contends also that the refusal of Instruction C tendered by the employer was error. That instruction directed a verdict for the employer if the jury found that the employer requested severance pay along with the unpaid wages due her for the four hours worked. *Doores v. Intercontinental Engineering–Manufacturing Corp.*, supra, does indeed construe the term in § 290.110—"wages earned at the contract rate"—to mean the basic rate of pay, and so disallowed a claim for vacation pay as beyond the operation of that statute. Neither *Doores* nor any reasonable sense of § 290.110, however, disqualifies a valid claim for "wages earned" merely because it is conjoined with an invalid claim for pay other than for "wages earned"—as vacation or severance pay. *Doores*—in fact—affirmed a judgment for "wages earned" but unpaid and penalty under § 290.110 while it disaffirmed the judgment for vacation pay.

■ American Greetings Corporation asserts also that the denial by the trial court of the motion in limine to exclude certain evidence was error. It is sufficient to say that a ruling on a motion in limine is interlocutory and hence its denial cannot constitute reversible error. That is because the subject of the objection may never reach the jury as evidence. *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App.1982). It is a timely objection at the trial to the proferred evidence which preserves the matter for review, and not the rejection of a motion in limine. *Honey v. Barnes Hospital*, 708 S.W.2d 686, 694[7, 8] (Mo.App.1986).

IV

American Greetings Corporation makes the final contention that the venue of the action was not proper and it was error for the court to refuse the motion to dismiss on that ground. Venue § 508.040, RSMo 1986 provides:

Suits against corporations shall be commenced either in the county where the cause of action accrued ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business.

The defendant is an Ohio corporation engaged in the sale of greeting cards, gift cards and other such merchandise through retail outlets. There is no contention that the cause of action accrued in Jackson County—where the action was brought—or that American Greetings Corporation had an office there. The question then is

whether the defendant was subject to suit in Jackson County as a venue where the corporation kept an "agent for the transaction of [its] usual and customary business."

 The rules of venue, as contradistinct from the stricter rules of service of process which relate to the judicial power to adjudicate, relate to the place of adjudication and so subserve the convenience of the litigants. *State ex rel. Pagliara v. Stussie*, 549 S.W.2d 900, 903[3,4] (Mo.App. 1977); 77 Am.Jur.2d *Venue* § 1 (1975). Section 508.040 evinces a policy "of broadly subjecting corporations to suit." *Id.* at 903[4] The term *agent* in venue § 508.040, therefore, construed to comport with that desideratum of statute, means as usual, and without technical restriction: a person another authorizes to act for that other, or one entrusted with the business of the other. *Id.*

It was the evidence that American Greetings Corporation maintained seven Sales Representatives in Jackson County in 1981, one of whom was the District Sales Manager, and maintained 14 Part–Time Merchandisers in that venue. The Sales Representatives solicited orders for the corporation products, had the authority to bind the corporation to employment contracts by the employment of Part–Time Merchandisers who worked in Jackson County. The corporation also employed a District Manager who worked out of his home in Jackson County and supervised the Sales Representatives, those who worked in that venue included. These activities through these corporate personnel—the solicitation of orders, the adjustment of customer complaints, the employment, supervision and discharge of employees, and the other exercises of authority on behalf of the corporation within Jackson County—were sufficient to prove the transaction by the corporation within the venue of it "usual and customary business" and that American Greetings Corporation kept an agent in Jackson County for that purpose.

The judgment is reversed as to Count II and remanded with directions that the trial court allow the plaintiff to amend the petition to plead a cause of action under § 290.140.2, as amended, for refusal by the employer to issue the requested service letter the statute defines. The judgment is affirmed as to Count III.

All concur.