**Robert M. KINCAID, Appellant,**

v.

**PITNEY BOWES, INC., Respondent.**

**No. WD 38878.**

Missouri Court of Appeals, Western District.

April 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Application to Transfer Denied June 14, 1988.

---

Gordon J. Gamm, Levine, P.C. & Gamm, Kansas City, for appellant.

Edward W. Mullen, Daniel J. Ryan, Deacy & Deacy, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

Robert M. Kincaid brought this suit for damages for failure to supply a service letter, pursuant to § 290.140, RSMo 1978. The trial court entered summary judgment for Pitney Bowes on the issues of whether Kincaid could be entitled to actual or punitive damages. Kincaid appeals, arguing: (1) that there was a material question of fact as to whether he suffered actual damages; and (2) that the trial court erred in holding that Pitney Bowes issued Kincaid a service letter, which holding precluded an award to Kincaid of punitive damages.

Reversed and remanded on the issue of actual damages with directions to enter judgment for nominal damages. Affirmed as to the issue of punitive damages.

Kincaid left Pitney Bowes' employ on December 31, 1981. The parties agree that Kincaid chose to leave the company voluntarily, rather than to accept a new position with the company. On January 5, 1982 Kincaid wrote the following letter to his former supervisor at Pitney Bowes, S.A. Pledger:

Dear Mr. Pledger:

This will serve as a request that your company furnish me a letter setting forth the nature and character of service rendered by me to Pitney Bowes and the duration thereof, and truly stating for what cause, if any, my services with the company were terminated.

Thank you.

/s/ Robert M. Kincaid

Kincaid sent Pledger another, similar letter on February 2, 1982.

Susan J. Hilgeman, Pitney Bowes' Manager of Employee Relations, replied to Kincaid's request by her letter of February 22, 1982. In her letter, Hilgeman made the following statements:

> This is in response to your January 5, 1982 letter to Mr. S.A. Pledger and your February 2, 1982, letter to Mr. George Krietler.
>
> I would first like to clarify that our records indicate you resigned from our employ. You were not terminated as you indicate in your correspondence and no correction to the record will be made.

Hilgeman's letter went on to discuss severance and vacation entitlements and bonus earnings, and ended by inviting Kincaid to contact Hilgeman directly if he needed further information. Hilgeman's letter contained no information responsive to the service letter request, other than what has already been reproduced. Not until February 21, 1984, did Pitney Bowes send a complete service letter to Kincaid.

During discovery in this case, Pitney Bowes obtained admissions by Kincaid that no prospective employers whom he contacted after his employment with Pitney Bowes asked to see a service letter, that he had not shown his letter to any such employers, and that no employers stated that Kincaid was "not being offered a position with that prospective employer because of the lack of, or deficiencies in, a service letter from defendant."

Despite these admissions tending to negate Kincaid's actual damages claim, Kincaid chose not to submit any evidence to the court to show actual damages until after the court had already granted summary judgment against him. Then he moved for a new trial or for amendment of the judgment against him, and as an exhibit to his motion, he submitted the affidavit of Stella Sollars. Sollars swore that she was an "employment agent," that two companies were her "clients," that they had openings for certain jobs, and that if she had had the information from a complete service letter she "would have been able to place [Kincaid] on these jobs." The trial court overruled Kincaid's motion.

■ Kincaid's first argument is that the trial court erred in entering summary judgment against him on the issue of actual damages because the Sollars affidavit created a genuine question of material fact concerning whether he had suffered actual damages from the inadequate service letter.

The Sollars affidavit was not sufficient to create a question of fact. Sollars was an employment agent, not an employer. An employer, not the agent, would have the ultimate decisional authority to hire or not to hire and to set a salary. *Rotermund v. Basic Materials Company*, 558 S.W.2d 688, 692 (Mo.App.1977). There is no indication that any facts existed by which Kincaid could show the elements required to recover substantial actual damages as set out in *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 622[3] (Mo. banc 1981) (that plaintiff was refused employment or hindered in obtaining employment on a certain date, that such refusal or hindrance was caused by absence or inadequacy of a service letter, that the position plaintiff sought was open, and the salary rate of that position). As later discussed herein, the letter was a violation of the statute. By showing that the service letter was inadequate, Kincaid is entitled to nominal damages. *Kling v. Professional Care Center, Inc.*, 735 S.W.2d 168, 169[3] (Mo.App.1987).

Kincaid's second argument is that the trial court erred in holding that Pitney Bowes could not be liable for punitive damages since it sent a service letter, albeit an incomplete one. Section 290.140, RSMo 1978, provided:

> Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said

corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment.

Section 290.140 was amended, effective August 13, 1982, to provide:

1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.

2. Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter.

Of course, the events in issue in this case took place prior to the amendment's effective date.

The Missouri Supreme Court held in *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656 (Mo. banc 1986), that the availability of punitive damages in cases tried after August 13, 1982, would be restricted by the new statute. Therefore, punitive damages could only be available in this case if Pitney Bowes failed to "issue the requested letter."

Kincaid advances several arguments to establish that Pitney Bowes failed to "issue the requested letter." First, Kincaid argues the letter was not what he requested, since it was only an incomplete response to his request. Second, he argues that the letter he received was signed by Susan Hilgeman for Pitney Bowes, whereas he had requested the letter from S.A. Pledger. Third, he argues that since Pitney Bowes did not send the letter within 45 days of the date of his request, it should be deemed to have failed to send the letter under § 290.140, RSMo 1986. Kincaid's arguments are without merit.

Kincaid argues that, under the statute, a failure to send a complete response is tantamount to a failure to send any response. Kincaid's argument fails to take into account the structure of the 1982 amended statute. The 1982 revision has two sections, the first governing the substantive requisites of a proper service letter and the second governing remedies for violation of the substantive requirements. Section 1 requires the corporation to issue a letter setting forth the nature and character of service rendered by the employee, the duration thereof, and the true cause for which the employee was discharged or voluntarily quit. Section 2, governing remedies, has three key provisions: the first provides that a corporation violating Section 1 "shall be liable for compensatory but not punitive damages"; the second provides that if the

corporation "did not issue the requested letter," it may be liable for nominal and punitive damages; and the third provides that no award of punitive damages "shall be based upon the content of any such letter."

■ The first issue is whether or not the letter sent by Pitney Bowes on February 22 can be said to be so incomplete that it falls within the category "did not issue the requested letter" or whether the letter merely constituted a violation of Section 1. The statute does not give any guide as to what would constitute a violation of Section 1, but it can be safely said that a letter which fully sets out the three requirements, nature and character of service, duration, and cause of discharge, would comply. On the other hand, a letter that did not set out the three requirements or any one of them would be a failure to issue the requested letter. A third category is a letter that sets out some of the three requirements but not in sufficient particularity to be held to comply.

The letter of February 22 is within the third category because it does not set out the nature and character of service or the duration thereof. It clearly violates Section 1 by failure to set out those requirements. The letter was in response to Kincaid's letter, which inquired of the cause for his termination. The reply informed him that he had not been terminated but had resigned. Thus, the letter directly responded to the request that Kincaid be given the true cause for termination by stating that he was not terminated but had resigned. The problem is to distinguish a letter that violates Section 1 from a letter that could be said to be a failure to issue the requested letter. In this case, the distinction comes down to whether the response advising that Kincaid was not terminated but had resigned is sufficient to qualify as a violation. This court holds that only if it can be said that a letter fails to address any of the requirements of Section 1 will such a letter constitute a failure to

"issue." Because the letter responded directly to the request for the true cause of termination by stating that Kincaid resigned, it cannot be said that the response failed to address the requirement that the letter state the true cause of termination or quit. Here, the request was for a reason for termination. The letter directly answered that query. For that reason, the letter of February 22 is a violation of Section 1 rather than a failure to issue the requested letter.[1]

Under Section 2, a violation of Section 1 subjects Pitney Bowes to liability for compensatory damages only but not punitive damages.

Kincaid contends that the provision in Section 2 "that the employer did not issue the requested letter" refers to a letter that does not comply with Section 1 because the employee requests a letter that complies rather than one that does not. This argument is answered by the plain terms of the statute, which makes a violation of Section 1 a ground for recovery of compensatory damages only. As noted, a violation of Section 1 would be a letter that did not set forth all three requirements but did set forth, to some extent, less than all three.

■ Next, this court cannot agree with Kincaid's argument that the fact that Kincaid's letter was answered by a different "superintendent or manager" than the one he sent his request to resulted in the letter not being the "requested letter" and exposed Pitney Bowes to liability for punitive damages. The courts have not interpreted the statutory references to "the superintendent or manager" to refer to an individual person. *See Bartow v. State Farm Mutual Automobile Insurance Co.,* 531 F.Supp. 20, 22 (W.D.Mo.1981) (manager or superintendent not liable in individual capacity; statute imposes obligation on corporation). The courts have not required employees to comply strictly with the requirement that they send the request to a particular person in order to recover; notice to the corporation has been deemed adequate.

1. In *Ball v. American Greeting Corporation,* — S.W.2d —— (Mo.App.1988) WD 38058, handed down concurrently herewith, this court was dealing with a complete failure to issue a letter and not a violation of Section 1.

*See Wuerderman v. J.O. Lively Construction Co.,* 602 S.W.2d 215, 220[4] (Mo.App. 1980). Accordingly, it appears appropriate to allow the corporation to assign the task of answering the service letter request to whatever "superintendent or manager" can best perform the task.

Furthermore, in this case Kincaid did not ask to receive a letter from a particular manager or superintendent; he merely requested that "the company" furnish him a service letter. Therefore, he has absolutely no right to complain about receiving a response from the Manager of Employee Relations, instead of from Pledger.

■ Finally, this court will not hold that the 45 day response requirement from the 1982 revision of § 290.140 applies to this case. Kincaid admits in his brief that this requirement is substantive, rather than remedial. It follows that the requirement cannot be applied retroactively to acts already accomplished before the statute was enacted. *Comerio v. Beatrice Foods Co.,* 595 F.Supp. 918, 921 (E.D.Mo.1984). *Cf. Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d at 660[2] (punitive damages provision can be applied retroactively only because it is remedial, rather than substantive).

The judgment granting summary judgment as to actual damages is reversed, and that cause of action is remanded with directions to enter judgment for nominal damages. The judgment granting summary judgment as to punitive damages is affirmed. Costs on appeal are assessed against Kincaid.

All concur.